**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| Same Day Processing, Inc.; <br> 44 North Lists, LLC; <br> Right Donor Builders PRM, LLC; and <br> The Free USA, LLC <br><br> Plaintiffs, <br><br> vs. <br><br> Gabriel Franck <br> Defendant. | Civil No. 23-731 <br><br> **COMPLAINT** <br><br> **(Jury Trial Demanded)** |

Plaintiffs Same Day Processing, Inc., 44 North Lists, LLC, Right Donor Builders PRM, LLC, and The Free USA, LLC (collectively, "Plaintiffs") for their Complaint against Defendant Gabriel Franck ("Defendant") allege as follows:

## **INTRODUCTION**

1. This action arises out of a former Same Day Processing, Inc. ("SDP") employee's improper retention, access, and transfer of Plaintiffs' trade secrets and confidential information.

2. Defendant's employment with SDP ended on or about August 31, 2023. While employed at SDP, Defendant had access to documents and information regarding highly confidential and proprietary donor data. Although, upon termination of his employment, SDP instructed Defendant to return all company property in his possession and to provide any passwords and other information pertaining to access to Defendant's computer, software, websites, website domains, file, and/or data, SDP recently discovered that Defendant nevertheless improperly accessed, downloaded, and retained confidential donor information. Defendant further failed to provide all passwords and other information necessary to access company documents maintained by Defendant during his employment.

3. On or about October 2, 2023, SDP discovered that Defendant had not only improperly accessed, downloaded, and retained Plaintiffs' trade secrets and confidential information, but also that Defendant was attempting to sell this information to third parties, including vendors with whom SDP has an ongoing and established business relationship. Defendant, in offering Plaintiffs' information for sale, held himself out as a representative of SDP, falsely suggesting to such third parties that Defendant's actions were authorized by SDP.

4. Defendant's conduct as described herein constitutes a violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*., the Wisconsin Uniform Trade Secrets Act, Wis. Stat. § 134.90, Defendant's duty of loyalty, as well as other law and/or agreements.

5. By this action, Plaintiffs seek to preserve the status quo and to stop the misappropriation of their trade secrets and confidential information by enjoining Defendant, and any other persons who are in active concert or participation with him, from using, disclosing, or selling Plaintiffs' confidential information.

## THE PARTIES

6. Plaintiff SDP is a Minnesota corporation with a principal business address located at 502 6th Street, Hudson, Wisconsin 54016.

7. Plaintiff 44 North Lists, LLC is a Puerto Rican limited liability company with a principal business address located at 157 Wood Lane, Humacao, Puerto Rico 00791.

8. Plaintiff Right Donor Builders PRM, LLC is a Puerto Rican limited liability company with a principal business address located at 157 Wood Lane, Humacao, Puerto Rico 00791.

9. Plaintiff The Free USA, LLC is a Wisconsin limited liability company with a principal business address located at 455 Carriage Lane, Hudson, WI 54016.

10. Defendant Gabriel Franck is an individual with a residence in Hudson, Wisconsin.

## JURISDICTION AND VENUE

11. This Court has original subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiffs' allegations arise under 18 U.S.C. § 1836(b), which provides for a right of civil action for theft of trade secrets. This Court has supplemental jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1367.

12. Venue is appropriate under 28 U.S.C. § 1391 because Defendant resides in this judicial district.

13. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant is a natural person domiciled in this state.

## FACTS

### I. Plaintiffs' Business Operations

14. Among other aspects of its business operations, Plaintiff SDP solicits contributions on behalf of federal and state political committees utilizing highly valuable, confidential donor lists and proprietary technical platforms to send out email- and text-based solicitations. Plaintiff 44 North Lists ("44 North") operates the texting arm of SDP's business, while Plaintiff Right Donor Builders ("RDB") operates the email arm of SDP's business.

15. SDP is a small business with fewer than ten employees.

16. RDB owns and maintains certain confidential and proprietary donor data that SDP and 44 North use to solicit contributions on behalf of federal and state political committees. RDB licenses this data to 44 North.

17. The Free USA also owns and maintains confidential and proprietary donor data, including a mailing list of contributions to political campaigns named Millions to the Right ("MTR").

18. RDB and The Free USA have expended a considerable amount of time and effort and large sums of money to obtain, develop, and maintain their confidential and proprietary donor lists.

19. In some instances, RDB and The Free USA purchase donor lists from third parties. These lists are costly to purchase and are often inaccurate and/or incomplete. Therefore, RDB and The Free USA must expend substantial time and resources to improve the data, including by slowly "warming up" the donor list to ensure that the list is effective and targets active donors. In addition, if RDB or The Free USA discovers that the donor list does not contain contact information for all donors, such as an email address or phone number, RDB must pay to have the data identified and appended to the donor list. Finally, in other instances, RDB or The Free USA obtain donor data directly from candidates pursuant to certain contractual provisions. Collecting donor data in this manner is a costly and time-consuming process.

20. To effectively solicit contributions for political candidates through use of its confidential and proprietary donor lists, Plaintiffs carefully control the frequency of text and email solicitations. The ability to control the frequency of solicitations is critical to Plaintiffs' business because, if donors on the donor lists are bombarded with text and email solicitations, they will be less likely to make a donation in response to any given solicitation and may also submit complaints to Plaintiffs' clients, thereby jeopardizing Plaintiffs' business relationships.

## II. Defendant's Relationship with The Free USA

21. Defendant began working for The Free USA as an independent contractor in or about November 2021 after receiving extensive onboarding and training concerning the scope of Defendant's responsibilities and The Free USA's systems and workspaces.

22. Defendant functioned as an email coordinator and data analyst for The Free USA. Defendant was tasked with assisting with discrete projects on an as-needed basis, such as testing

emails, processing and analyzing data, assisting with the organization and management of email data, and similar tasks. Defendant was assigned an email address for The Free USA for purposes of executing his responsibilities.

23. Defendant was paid approximately $3,000/month.

24. In his capacity as an independent contractor for The Free USA, Defendant was provided with access to confidential and trade secret information, including confidential donor lists. Access to this information was critical to Defendant's job responsibilities. For example, Defendant was tasked with managing and executing a lengthy project aimed at monetizing older donor data contained in the MTR donor list owned by The Free USA. The goal of this project was to create a new donor list that would likewise be owned by The Free USA. Defendant was aware that The Free USA owned the MTR donor list and would likewise own any new donor list created from that data source. Defendant was supervised throughout the execution of this project and was provided with guidance and correction as needed.

25. In addition, Defendant was tasked with combining and consolidating different data sources. Defendant therefore had access to other confidential and trade secret data owned by The Free USA, including for example a donor list known as APNJ. Such access was necessary for Defendant to effectively execute his job responsibilities.

26. In executing these responsibilities, Defendant created updated data sets stored on a password protected Google Drive.

27. The Free USA also maintains certain third-party data which The Free USA has authorization to possess, access, and use for specified purposes. Defendant had access to this data during the course of his employment, as such access was necessary for Defendant to execute his job responsibilities.

28. The Free USA has undertaken reasonable steps to maintain the confidentiality of The Free USA and third-party data, including for example the MTR donor list. The Free USA data and any third-party data to which it has access is stored on a password-protected platform and access is limited to only individuals employed or contracted by The Free USA with a need to access the data in the execution of their employment responsibilities.

29. Upon information and belief, Defendant was aware that The Free USA and third-party donor data was highly confidential, trade secret, and valuable. In fact, the Free USA advised Defendant of the sensitive, secret nature of the donor data to which Defendant had access.

30. To this day, upon information and belief, Defendant retains access to confidential and proprietary data, including but not limited to the MTR and APNJ donor lists.

31. Additionally, The Free USA has reason to believe that Defendant retains access to confidential and proprietary data maintained by The Free USA and owned by third parties.

32. In or about December 2022, Defendant ceased working for The Free USA.

### III. Defendant's Employment with SDP

33. In or about January 2023, Defendant accepted employment as an Account Associate at SDP. Defendant was a salaried employee of SDP from approximately January 2023 to August 31, 2023.

34. 44 North does not have its own employees. Accordingly, SDP employees perform work for 44 North on an as-needed basis pursuant to an arrangement between SDP and 44 North whereby 44 North pays SDP a management fee.

35. During his employment with SDP, Defendant was responsible for assisting SDP and 44 North in soliciting contributions on behalf of federal and state political committees utilizing highly valuable, confidential donor lists and proprietary technical platforms to send out email- and text-based solicitations.

36. During the course of his employment, Defendant worked in SDP's offices located at 502 6th Street, Hudson, Wisconsin 54016. Defendant was expected to work Monday-Friday, 9AM – 5PM.

37. Defendant utilized SDP equipment to discharge his employment responsibilities, including company issued laptops. Defendant was provided with a company email address for his work on behalf of 44 North.

38. In order to execute his job responsibilities, Defendant was provided access to highly confidential, trade secret, and valuable donor data utilized by 44 North for text-based solicitations sent on behalf of high-profile candidates (the "44 North Data"). The 44 North Data is owned by RDB and licensed to 44 North. SDP and SDP employees performing work on behalf of 44 North are authorized to access this data.

39. Plaintiffs have undertaken reasonable steps to maintain the confidentiality of the 44 North Data.

40. For example, SDP has an Employee Handbook that provides as follows:

**D. CONFIDENTIALITY**
As the result of your employment at Same Day Processing you will have access to confidential and proprietary information belonging to the Company and/or its clients. Confidential Information is any information of any kind, nature, or description concerning any matters affecting or relating to your services for Same Day Processing and/or its Clients, the business or operations of Same Day Processing and/or its Clients, and/or the products, drawings, plans, processes, or other data of Same Day Processing and/or its Clients, ("Confidential Information").

As a condition of employment, you agree to the following:

- To hold the Confidential Information received from Same Day Processing and/or its Clients in strict confidence and to exercise a reasonable degree of care to prevent disclosure to others.

- To not disclose or divulge either directly or indirectly the Confidential Information to others unless first authorized to do so in writing by Same Day Processing.

- To not reproduce the Confidential Information nor use this information commercially or for any purpose other than the performance of your duties for Same Day Processing and/or its Clients.

- Upon request or upon termination of your employment relationship with Same Day Processing, to deliver to Same Day Processing any drawings, notes, documents, equipment, and materials received from Same Day Processing or originating from your activities for Same Day Processing and/or its Clients.

- Same Day Processing shall have the sole right to determine the treatment of any information that is project specific received from its employees, including the right to keep the same as a trade secret, to use and disclose the same without prior patent applications, to file copyright registrations in its own name or to follow any other procedure as Same Day Processing may deem appropriate.

The Company reserves the right to take disciplinary action up to and including termination of employment if an employee is deemed to have misused any Confidential Information. As part of your on-boarding with Same Day Processing you may be required to sign a non-disclosure agreement containing the above terms.

41. Additionally, Plaintiffs allow only a limited number of employees access to the donor lists, and access is further limited to only such data as is necessary to discharge the employees' duties. For example, employees that work exclusively with the texting arm of the business obtain access to only those lists applicable to the texting arm of the business. Similarly, employees that work exclusively with the email arm of the business obtain access to only those lists applicable to the email arm of the business. Only employees, such as Defendant, with responsibilities for both texting and email solicitations receive access to all proprietary and confidential donor data.

42. Plaintiffs' proprietary and confidential donor lists are further protected with password restrictions.

43. It is generally known in the industry that donor lists such as those owned by Plaintiffs are confidential and proprietary.

44. On information and belief, Defendant was aware that Plaintiffs' donor lists were confidential and proprietary. In fact, SDP advised Defendant of the sensitive, secret nature of the donor data to which Defendant had access.

45. In mid-August, Defendant ceased coming to work. After 16 consecutive days of absence, SDP terminated Defendant's employment effective August 31, 2023 via a termination letter sent to Defendant via email.

46. The August 23, 2023 termination letter stated as follows: "Please return any company property that you have in your possession, including your laptop. In addition, please provide any passwords or other information pertaining to accessing your computer, software, websites, website domains, file and/or data."

47. Defendant subsequently filed for unemployment. Defendant's application was denied because Defendant was terminated for misconduct.

## IV. Plaintiffs Discover Defendant's Theft of the Confidential Donor Data

48. On or about October 2, 2023, Plaintiffs discovered that while Defendant was still employed by SDP and while purporting to act on behalf of SDP, Defendant had used 44 North's vendor's proprietary texting platform and the 44 North Data to send text solicitations on behalf of political candidates that had not been authorized or approved by SDP. Following his termination, Defendant sought to obtain payment from the vendor for these unauthorized solicitations, instructing the vendor to submit payment to Defendant's LLC, Piera Media LLC, rather than to SDP. In addition, Plaintiffs discovered that Defendant had, on multiple occasions, offered to sell

Plaintiffs' confidential and proprietary donor lists to the vendor. In these solicitations, Defendant falsely held himself out as a representative of Plaintiffs.

49. Upon information and belief, Defendant retains access to the 44 North Data.

## V. Pre-Complaint Discussions with Defendant

50. On October 5, 2023, counsel for Plaintiffs sent Defendant a letter detailing Defendant's misconduct and demanding that Defendant, among other things, confirm in writing that he would not disclose any of Plaintiffs' confidential data to any third party. Counsel for Plaintiffs demanded a response by no later than October 9, 2023.

51. On October 6, Defendant responded to Plaintiffs' October 5 letter stating he was seeking counsel and requesting an extension of time to respond to Plaintiffs' letter.

52. On October 9, Plaintiffs granted Defendant until October 13, 2023 to respond to Plaintiffs' letter, provided that Plaintiffs received confirmation from Defendant that he would immediately cease all use and/or disclosure of any and all SDP data. By letter dated October 10, 2023, Defendant informed counsel for Plaintiffs that he would "follow the law" and would not disclose Plaintiffs' data.

53. On October 13, 2023, counsel for Defendant sent a letter to counsel for Plaintiff requesting additional time to respond to Plaintiffs' letter of October 5. The letter confirmed that Defendant would "continue to act in accordance with the law" and further agreed "to refrain from any financial activity connected to the companies or people related to this matter between now and the time when our substantive response is delivered to you."

# COUNT I
## Violation of Defend Trade Secrets Act
### (18 U.S.C. § 1836(b))

54. Plaintiffs reallege and incorporate by reference herein the foregoing allegations of the Complaint.

55. Defendant misappropriated Plaintiffs' confidential and proprietary donor lists and/or donor lists Plaintiffs were authorized to use in that he knowingly retained the information by improper means.

56. Plaintiffs' trade secret donor lists are related to a service used in, or intended for use in, interstate or foreign commerce.

57. Plaintiffs' trade secret confidential donor lists are known only to Plaintiffs and those to whom Plaintiffs disclose the information in confidence. The confidential donor lists are not a matter of public knowledge or generally known within the industry.

58. Plaintiffs' trade secret donor lists derive independent economic value from not being generally known or readily ascertainable through proper means by another person.

59. Plaintiffs have taken reasonable steps to maintain the confidential nature of their trade secret donor lists, including but not limited to the information that Defendant misappropriated.

60. Defendant possesses Plaintiffs' trade secret confidential donor lists without any color of right.

61. Defendant's actions in misappropriating Plaintiffs' trade secret confidential donor lists were done willfully and maliciously.

62. Defendant's actions violate the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832, *et seq*.

63. Plaintiffs will suffer damages as a result of Defendant's breach in an amount to be determined at trial. Plaintiffs will also suffer irreparable injury absent injunctive relief, and Plaintiffs are entitled to an injunction to prevent Defendant's misappropriation and threatened future misappropriation.

## COUNT II
### Wisconsin Uniform Trade Secrets Act (Wis. Stat. § 134.90)

64. Plaintiffs reallege and incorporate by reference herein the foregoing allegations of the Complaint.

65. Plaintiffs spent a significant amount of money and devoted substantial labor in acquiring and developing the trade secret confidential donor lists, which are of substantial monetary value to Plaintiffs.

66. As alleged in this Complaint, Plaintiffs reposed trust and confidence in Defendant and provided him access to Plaintiffs' confidential and proprietary donor lists and/or donor lists Plaintiffs were authorized to use during his employment with SDP and The Free USA. The donor lists are confidential and proprietary and constitute valuable trade secrets belonging to RDB and The Free USA.

67. Plaintiffs' trade secret confidential donor lists are known only to Plaintiffs and those to whom Plaintiffs disclose the information in confidence. The confidential donor lists are not a matter of public knowledge or generally known within the industry. Plaintiffs have taken reasonable precautions to preserve the secrecy of their trade secret confidential donor lists.

68. Plaintiffs' trade secret donor lists derive independent economic value from not being generally known or readily ascertainable through proper means by another person.

69. The trade secret confidential donor lists have allowed Plaintiffs to obtain a fair and lawful competitive advantage over those who do not know or have the right to use their trade secret confidential information.

70. Defendant has improperly retained, and has or may use or disclose, Plaintiffs' trade secret confidential donor lists and/or donor lists Plaintiffs were authorized to used, which he acquired solely as a result of his employment and relationship of trust with SDP and The Free USA. This constitutes a misappropriation of Plaintiffs' valuable trade secret confidential information.

71. Defendant is well aware that the trade secret confidential information is to remain confidential and his misappropriation of such information is willful and intentional. Therefore, Plaintiffs are entitled to all actual and exemplary damages resulting from this misappropriation.

72. Defendant's improper retention and, on information and belief, use and disclosure of Plaintiffs' trade secret confidential donor lists has and will seriously damage, and will continue to seriously damage, Plaintiffs in an amount that is not presently ascertainable. Defendant's conduct will further irreparably injure Plaintiffs and, accordingly, Plaintiffs request that the Court permanently enjoin Defendant, and any other persons who are in active concert or participation with him, from using or disclosing Plaintiffs' confidential information.

### COUNT III
### Misappropriation of Confidential Information

73. Plaintiffs reallege and incorporate by reference herein the foregoing allegations of the Complaint.

74. As alleged in this Complaint, Plaintiffs reposed trust and confidence in Defendant and provided him access to Plaintiffs' confidential and proprietary donor lists and/or donor lists

Plaintiffs were authorized to use during his employment with SDP. The donor lists are confidential and proprietary.

74. Defendant has improperly retained, and has or may use or disclose, Plaintiffs' confidential and proprietary donor lists and/or donor lists Plaintiffs were authorized to use, which he acquired solely as a result of his employment and relationship of trust with SDP and The Free USA. This constitutes a misappropriation of Plaintiffs' confidential information.

75. Defendant's improper retention and, on information and belief, use and disclosure of Plaintiffs' confidential and proprietary donor lists and/or donor lists Plaintiffs were authorized to use has and will seriously damage, and will continue to seriously damage, Plaintiffs in an amount that is not presently ascertainable. Defendant's conduct will further irreparably injure Plaintiffs, and accordingly Plaintiffs request that the Court permanently enjoin Defendant, and any other persons who are in active concert or participation with him, from using or disclosing RDB and The Free USA's confidential information.

## COUNT IV
**Breach of Duty of Loyalty**
**(On Behalf of SDP Only)**

77. Plaintiffs reallege and incorporate by reference herein the foregoing allegations of the Complaint.

78. Defendant was a key employee of SDP who possessed knowledge of and access to Plaintiffs' confidential and proprietary donor lists during the course of his employment. Such knowledge and access was required for Defendant to effectively discharge his employment responsibilities.

79. The confidential and proprietary donor lists, if shared with a competitor or other third party, could significantly harm Plaintiffs.

80. Defendant owes SDP a fiduciary duty of loyalty, which includes a duty to maintain the confidentiality of Plaintiffs' confidential donor lists.

81. Defendant breached his duty of loyalty to SDP. While Defendant was still employed by SDP and while purporting to act on behalf of SDP, Defendant used SDP's vendor's proprietary texting platform and Plaintiffs' confidential donor lists to send text solicitations on behalf of political candidates that had not been authorized or approved by SDP.

82. Plaintiffs will suffer damages as a result of Defendant's breach in an amount to be determined at trial. Plaintiffs will also suffer irreparable injury absent injunctive relief, and Plaintiffs are entitled to an injunction to prevent Defendant's breach and threatened further breach.

## COUNT V
### Conversion

83. Plaintiffs reallege and incorporate by reference herein the foregoing allegations of the Complaint.

84. Defendant obtained Plaintiffs' confidential and proprietary donor lists and/or donor lists Plaintiffs were authorized to use without authorization.

85. Defendant used RDB's confidential donor lists without RDB's authorization to send text message solicitations to individuals and to solicit payments from third parties for disclosure of the confidential donor lists.

86. Defendant has refused to return Plaintiffs' confidential and proprietary donor lists and/or donor lists Plaintiffs were authorized to use.

87. Defendant's conduct has interfered with Plaintiffs' right to the confidential donor lists, which is rightfully RDB and The Free USA's property.

88. Defendant has wrongfully exerted dominion over Plaintiffs' property.

89. Defendant's improper retention and, on information and belief, use and disclosure of Plaintiffs' confidential and proprietary donor lists and/or donor lists Plaintiffs were authorized

to use has and will seriously damage, and will continue to seriously damage, Plaintiffs in an amount that is not presently ascertainable. Defendant's conduct will further irreparably injure Plaintiffs, and accordingly Plaintiffs request that the Court permanently enjoin Defendant, and any other persons who are in active concert or participation with him, from using or disclosing Plaintiffs' confidential information.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. An Order issuing a permanent injunction enjoining Defendant, and any other persons who are in active concert or participation with him, from using or disclosing any of Plaintiffs' confidential information;

2. An Order issuing a permanent injunction enjoining Defendant, and any other persons who are in active concert or participation with him, from altering, deleting, or destroying any of Plaintiffs' confidential information during the pendency of this action;

3. An Order requiring a verified return by Defendant, and any other persons who are in active concert or participation with him, of all Plaintiffs' confidential information from all sources;

4. Judgement against Defendant and in favor of Plaintiffs for:

    a. All damages proximately caused by Defendant's wrongful actions;

    b. Damages for any unjust enrichment caused by the misappropriation of Plaintiffs' confidential information that is not addressed in computing damages for actual losses to Plaintiffs;

c. Exemplary damages in an amount two (2) times the amount of the combined actual and unjust enrichment damages; and

d. All interest, reasonable attorneys' fees, and costs available under the law;

6. Awarding Plaintiffs such other, further, or different relief as the Court deems just and proper.

Dated: October 20, 2023

By:   */s/ Andrew C. Gresik*

Roberta F. Howell
Andrew C. Gresik
Foley & Lardner LLP
150 East Gilman Street
Madison, WI 53703
Telephone: (608) 258-4273
Facsimile: (608) 258-4258
rhowell@foley.com
agresik@foley.com

Lauren W. Linderman (*pro hac* to be filed)
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

***Attorneys for Plaintiffs***