United States District Court
Western District of Wisconsin

_____

| | | |
|---|---|---|
| Same Day Processing, Inc.; | ) | Civil No. 23-731 |
| 44 North Lists, LLC; | ) | |
| Right Donor Builders PRM, LLC; and | ) | |
| The Free USA, LLC | ) | **DEFENDANT'S ANSWER** |
| Plaintiffs, | ) | **COUNTERCLAIMS &** |
| | ) | **THIRD-PARTY CLAIMS.** |
| vs. | ) | |
| | ) | **(Jury Trial Demanded)** |
| Gabriel Franck | ) | |
| Defendant | ) | |
| Third Party Plaintiff | ) | |
| vs. | ) | |
| | ) | |
| Thomas Datwyler | ) | |
| Third Party | ) | |
| Defendant | ) | |

_____

## ANSWER

Defendant Gabriel Franck, for his Answer to Plaintiffs' Complaint, states and alleges as follows:

1. Deny each and every paragraph, matter and allegation contained in the Complaint, except as hereinafter qualified, admitted or explained.

2. Admit the allegations contained in the following paragraphs: 10 – 13, 46, 50 – 53.

3. Upon reasonable investigation, Defendants are without sufficient information to admit or deny the allegations contained in the following paragraphs: 4 - 9, 14 – 20, 30, 31, 34, 40, 43.

4. With respect to Paragraph 1, Defendant is without sufficient information to respond to what gave rise to Plaintiff's bringing the action and specifically denies: (1) ever being

1

employed by Plaintiff Same Day Processing, Inc. ("SDP"), or (2) retaining access of and transferring SDP's trade secrets and confidential information.

5. With respect to Paragraph 3, Defendant is without sufficient information to know what, if anything SDP discovered on October 2, 2023. Defendant specifically denies: (1) improperly accessing, downloading, and retaining SDP's trade secrets and confidential information, (2) that Defendant attempted to sell that information to third parties and (3) that Defendant held himself out as a representative of SDP or suggesting to those third parties that Defendant's actions were authorized by SDP.

6. With respect to Paragraph 22, Defendant admits being assigned an email address for The Free USA. Defendant specifically denies all other claims and/or allegations contained in Paragraph 22.

7. With Respect to Paragraph 27, Defendant is without sufficient information to affirm or deny whether Plaintiff, The Free USA, maintains certain third-party data which The Free USA has authorization to possess, access, and use for specified purposes or whether Defendant had access to such third-party data. Defendant specifically denies that Defendant was employed by The Free USA.

8. With respect to paragraph 37 Defendant admits having an email address for 44 Plaintiff 44 North and an email address for Plaintiff SDP. Defendant denies all other claims and/or allegations contained in Paragraph 37.

9. With Respect to Paragraph 38, Defendant is without sufficient information to affirm or deny whether the 44 North Data is owned by RDB and licensed to 44 North or whether SDP and SDP employees performing work on behalf of 44 North are authorized to access

that data. Defendant denies all other claims and/or allegations contained in Paragraph 38.

    10.    With respect to Paragraph 47, Defendant admits to mistakenly filing for one week of unemployment. Defendant denies that application was denied solely because he was terminated for misconduct.

## DEFENSES

1. Plaintiff's Complaint, in whole or in part, may have failed to state a claim upon which relief can be granted.

2. Plaintiff's fail to describe the subject matter of the trade secret, confidential and/or proprietary data with sufficient particularity.

3. Granting Plaintiffs any damages would result in unjust enrichment.

## AFFIRMATIVE DEFENSES

1. Defendant affirmatively alleges that Plaintiff's damages, if any, were caused by Plaintiff's own contributory fault, negligence and carelessness.

2. Defendant affirmatively alleges that Plaintiff's Complaint, in whole or in part, may fail due to lack of privity.

3. Defendant affirmatively alleges that Plaintiff's Complaint, in whole or in part, may be barred due to the statute of frauds.

4. Defendant affirmatively alleges that Plaintiff's Complaint, in whole or in part, may be barred due to a breach by one of the Plaintiffs.

5. Defendant affirmatively alleges that, to the extent Plaintiffs incurred damages, one or more of the Plaintiffs failed to mitigate those damages.

6. Defendant affirmatively alleges that Plaintiff's damages, if any, may have been caused by the acts or omissions of other parties over whom Defendant had no control or right of control.

7. Defendant affirmatively alleges that Plaintiff's damages, if any, were caused by Plaintiff's own failure or inability to provide acceptable products, service and support to its customers.

8. Defendant affirmatively alleges that Plaintiff's damages, if any, are offset by money owed Defendant by Plaintiff 44 North Lists, LLC, Plaintiff Right Donor Builders PRM, LLC and/or Plaintiff The Free USA, LLC.

9. Defendant affirmatively alleges that Plaintiff's claims may be barred in whole or in part by the doctrines of unclean hands, estoppel or waiver.

10. Defendant affirmatively alleges that Plaintiff's claims may be barred in whole or in part because Plaintiffs may have provided any and/or all alleged confidential and/or proprietary information to Defendant without requesting, demanding, or informing that such information was proprietary, trade secret, or otherwise subject to confidentiality or other restrictions.

11. Defendant affirmatively alleges that Plaintiff's claims may be barred in whole or in part because Plaintiff's predecessor and/or successor in interest may have provided any and all alleged confidential and/or proprietary information to Defendant without requesting, demanding, or informing that such information was proprietary, trade secret, or otherwise subject to confidentiality or other restrictions.

12. Defendant specifically reserves the right to allege such other and further affirmative defenses as may be properly interposed pending discovery in this matter.

## COUNTER & THIRD PARTY CLAIMS

Defendant, Gabriel Franck, as and for his Counterclaim against Plaintiffs Same Day Processing, Inc., 44 North Lists, LLC, Right Donor Builders PRM, LLC and The Free USA, LLC and Third-Party Claim against Thomas Datwyler, states and alleges as follows:

1. Third Party Defendant Thomas Datwyler ("Datwyler") is an individual with a residence in Hudson, Wisconsin.

2. Upon information and belief, Datwyler owns an interest in Plaintiff Same Day Processing, Inc.

3. Upon information and belief, Datwyler owns an interest in Plaintiff 44 North Lists, LLC.

4. Upon information and belief, Datwyler owns an interest in Plaintiff Right Donor Builders PRM, LLC.

5. Upon information and belief, Datwyler owns an interest in Plaintiff The Free USA, LLC.

6. Defendant Gabriel Franck ("Franck") graduated from the University of Wisconsin-Madison, in 2020 with a degree in Political Science. After graduation, while he searched for a job, Franck lived in his parents' home located in Hudson, Wisconsin.

7. Datwyler resides across the street and a few houses down from Franck's parents in Hudson, Wisconsin.

8. Datwyler's father, Thomas Datwyler, Sr. and Franck's father, Todd Franck, grew up in the Hudson, Wisconsin area and attended the same K-12 schools.

9. In or about March 2021, Datwyler and Franck became friendly. Over the course of several months, Datwyler invited Franck numerous times to join Datwyler for exercise

together at the gym located in Datwyler's private residence.  During that time exercising Franck and Datwyler got to know each other.  Franck informed Datwyler that he was a recent graduate with a degree in political science.  Datwyler claimed he, and some of his businesses, were active in the political field.  Datwyler further claimed to have several contacts in the political field and offered to send Franck's resume to those contacts in and attempt to help Franck attain a job.

10. Due to the familiarity between the Franck and Datwyler fathers and the conversations between Datwyler and Franck, Franck viewed Datwyler as a trusted mentor.

11. On or about June 22, 2021, Datwyler suggested to Franck that Franck join Datwyler in one or more of Datwyler's business ventures.  Franck offered to work with Datwyler if needed; however, at that time, no projects were undertaken by Franck for Datwyler and Franck continued his search for a job.  Datwyler continued to reach out to Franck numerous times in order to further gain Franck's trust and discuss business opportunities.

12. In or about August 2021, Franck accepted a position with Bell Bank in Woodbury, Minnesota.  That position paid a base salary of $50,000.00 per year with opportunities for bonuses along with benefits such as retirement account matching and health insurance.

13. Franck informed Datwyler of his new position at Bell Bank.  Datwyler inquired of the compensation Franck was to receive in that position.   After Franck described that compensation, Datwyler offered to pay Franck $5,000.00 per month to join Datwyler's political fundraising businesses.  Franck turned down that opportunity because he was not interested in making a move from Bell Bank for comparable compensation.

14.    On or about August 25, 2021, Datwyler proposed a business opportunity to Franck. Datwyler claimed to have ownership interest in a business involved in political fundraising. The day-to-day functions of that business was run by an individual residing in California named Kyle Swarts ("Swarts") who was not performing due to "laziness".  Datwyler further claimed that, despite his lack of performance, Swarts earned between $30,000.00 and $60,000.00 per month.  Datwyler then showed Franck documentation that stated the business Datwyler just described generated more than $2,000,000.00 in a single year. Datwyler represented to Franck that Franck's ownership interest in that venture would result in Franck earning a minimum of $200,000.00 for the upcoming year.  Franck agreed to consider the opportunity.

15.    On or about September 24, 2021, Franck began to learn how the political fundraising venture raised funds via electronic mail.

16.    In or about October 2021, Franck and Datwyler again discussed the partnership structure and initial compensation.  The parties agreed that Franck would join Datwyler as a partner.

17.    For his 50% interest in the venture, Datwyler was to provide business experience, raw data that the venture would process and turn into lists of potential donors, manage the finances of the venture and he was to invest some operating capital.  Other than periodically offering business insights, the raw data and operating capital, Datwyler would be hands off – providing no day-to-day effort on behalf of the venture.

18.    For his 50% interest in the venture, Franck was to make the venture his primary focus.  In doing so, Franck was to provide, among other things, his time used to process the raw data, establish accounts with third party venders to both further process the raw

data and enable the venture to send numerous texts and/or e-mails at one time, oversee the short and long term goals and operations of the venture.

19. In addition to Franck's rights to his share of the profits, in part to entice Franck to leave his job at Bell Bank, Datwyler agreed to ensure Franck received a $2,000.00 monthly stipend while the venture grew into profitability.

20. On or about November 22, 2021, Datwyler instructed Franck to complete an IRS W9 form in order to receive that $2,000.00 per month from Plaintiff The Free USA, LLC ("Free USA"). Franck complied and provided Datwyler a fully executed IRS W9 form.

21. Before Franck accepted the business relationship terms agreed to with Datwyler, to ensure he could perform the tasks assigned, Franck sought to learn more about how that business operated. Datwyler informed Franck that he would send Franck the information needed for Franck to understand what he would need to accomplish.

22. On or about November 30, 2021, Datwyler, from Datwyler's unsecured electronic mail account, tcdatwyler@gmail.com ("Datwyler's Gmail"), sent a set of raw data to Franck's unsecured, generic, gabe.franck1@gmail.com, electronic mail account ("Franck's Gmail"). The raw data was attached to that electronic mail message in three files: (1) MasterDataPull.xslx, (2) MasterList1.xlsx, and (3) MasterList2.xlsx. None of those files were encrypted, nor password protected.

23. On or about November 30, 2021, via unsecured electronic mail sent to Franck's Gmail from Swarts' unsecured electronic mail account, tcdatwyler@gmail.com, Swarts provided Franck access to a Google work folder labeled "The Free USA". Neither that electronic mail nor the Google folder were encrypted, nor password protected. All

8

documents relating to The Free USA were kept in that The Free USA Google work folder, including, without limitation, the raw data and the contact lists derived from the same.

24.    After working with the raw data and the information and documentation contained in The Free USA Google work folder, Franck was confident he could perform the duties required by the agreement he reached with Datwyler regarding the business venture.

25.    In or about November, 2021, Franck notified Datwyler he was ready to move forward with the business venture. Datwyler suggested, instead of starting a new company, that Franck join The Free USA. All terms would remain the same, however, instead of Franck receiving 50% ownership, he would own 25% of that business until Swarts was removed at which point Franck would own 50% of that venture. Franck agreed to that change.

26.    The Free USA, LLC was engaged by representatives of various politicians to send messages, created by those representatives, that sought donations to prospective political donors via electronic mail.

27.    On or about December 2, 2021, Franck notified Datwyler that Franck resigned his position at Bell Bank and was starting his fulltime efforts on their business venture. Datwyler responded "[y]ou the man! Let's Fucking go".

28.    On or about January 10th, 2022, Datwyler notified Franck that Swarts refused or failed to return Datwyler's calls. Datwyler informed Franck that Franck needed to take over all of the work done by Swarts because Swarts was no longer reliable.

29.    On or about March 3, 2022, after taking on a larger workload than originally discussed, Franck expressed concern to Datwyler that Franck had not seen any of the profits from their business and that $2,000.00 was not enough to justify working long

hours seven days a week.  Datwyler asked Franck to hang with him a little longer because as soon as Swarts was out, they would be making money.  Trusting his mentor, Franck continued his efforts on behalf of Datwyler and Franck's business.

30. In or about March 2022, Franck attended educational meetings to learn the laws and regulations related to campaign financing. In particular, Franck learned how to appropriately seek donations via text messaging.  Franck then established the accounts necessary for Datwyler and Franck's businesses to send donation requests via text messaging.

31. On or about April 20, 2022, Datwyler notified Franck that Datwyler had another check for Franck.  In particular, Datwyler stated "[g]oing to keep paying you until we turn a profit on this…".

32. On or about June 8, 2022, Datwyler, from Datwyler's Gmail, sent Franck another set of raw data to Franck's Gmail.  The raw data was attached to that electronic mail message in a single .csv file. That file was neither encrypted, nor password protected.

33. On or about December 5, 2022, Swarts locked Franck out from the vendor accounts used by The Free USA, LLC to conduct its business.  Swarts failed or refused to respond to Franck's attempt to communicate.

34. Upon information and belief, Swarts failed or refused to respond to Datwyler's attempt to communicate and never returned any of the documents, data, information, etc. owned by The Free USA.

35. Due to Swarts cutting Datwyler and Franck off from all of The Free USA accounts, including, among other things, The Free USA Google work folder, third party vendor

accounts used to process the raw data and send out mass text and electronic mail messages, Franck and Datwyler had to start from scratch.

36. On or about January 2, 2023, Datwyler notified Franck that they needed to set up a company "for the two of us" to operate their venture through. Datwyler further instructed Franck to establish the third-party vendor accounts necessary for their new company to conduct business in the same manner as The Free USA, LLC conducted its business.

37. From the beginning of his efforts toward Franck's venture with Datwyler, Franck worked solely from home. On or about January 2, 2023, to provide Franck an opportunity to get out of Franck's house from time to time, Datwyler offered Franck use of office space at the location of another of Datwyler's businesses, Plaintiff Same Day Processing, Inc. Franck accepted that offer until Franck realized there was no specific space set aside for Franck to work. After that, Franck worked primarily from home while still going into Same Day Processing's office periodically – often to ensure Franck had an opportunity to talk with Datwyler.

38. On or about January 2, 2023, after Franck again raised concerns over the lack of profits, Datwyler suggested Franck attempt to take on another job. Datwyler offered a referral to a business called "Prosper Group" as well as a position with a business called "Axiom".

39. Upon information and belief, Axiom has a financial and/or ownership interest in Plaintiff Same Day Processing, Inc.

40. Datwyler and Franck agreed to call the new company, The Eagle News Network. Now that Swarts was not part of the venture, Franck's ownership was 50% while

Datwyler's remained 50%. Datwyler stated he would get the paperwork drawn up to establish The Eagle News Network LLC.

41. On or about January 6, 2023, Datwyler provided Franck with a Delaware Certificate of Formation for a limited liability company named "The Eagle News Network LLC" and instructed Franck to sign the same. Franck signed and returned the fully executed Certificate of Formation to Datwyler.

42. The Eagle News Network LLC was engaged by representatives of various politicians to send messages, created by those representatives, that sought donations to prospective political donors primarily via electronic mail. Some such messages were also sent by Eagle News Network LLC using text messaging.

43. To avoid donor fatigue and to avoid electronic mail servers from flagging their mass mailings as "spam" or "junk", Datwyler and Franck utilized additional businesses and/or business names that did the same or similar work as The Eagle News Network LLC.

44. Upon information and belief, all such businesses referenced in Paragraph 43 funneled their income into The Eagle News Network LLC for it to be distributed pursuant to The Eagle News Network LLCs' business structure.

45. On or about January 10, 2023, Datwyler, from Datwyler's Gmail, sent Franck another set of raw data to Franck's Gmail. The raw data was attached to that electronic mail message in a single file named "1.6.23.xslx". That file was neither encrypted, nor password protected.

46. On or about January 16, 2023, Franck sent Datwyler an outline for a business venture different from the political fundraising businesses in which they were currently engaged. Datwyler agreed to pursue that new venture in partnership with Franck called

Synch. The parties understood that Datwyler and his brother Timothy Datwyler would own 50% Synch for providing capital, Franck would own 25% of Synch for his time and efforts designing and building Synch and 25% of ownership was set aside for potential investors.

47. On or about June 20, 2023, Franck and Datwyler, along with Brian Chatwin and Ryan Datwyler, created Plaintiff 44 North Lists, LLC. Franck owned 25% of that business and was to receive 50% of profits from the accounts known only to Datwyler and Franck.

48. Franck continued to express his concern and frustration to Datwyler regarding the lack of profits. In or about August, 2023, Franck was copied on an electronic mail that indicated the business ventures in which he was an owner, entitled to profits, were, contrary to Datwyler's claims, very profitable. Franck made multiple attempts to discuss this information with Datwyler. Datwyler refused or failed to communicate with Franck regarding the same.

49. On or about August 30, 2023, Franck sent Datwyler's brother, Timothy Datwyler – also an owner in Plaintiff 44North Lists, LLC, an electronic mail explaining the situation.

50. On or about August 31, 2023, Datwyler notified Franck that Franck was cut out of all business ventures.

51. Neither the Plaintiffs' nor Datwyler ever paid Franck any profits owed Franck per his ownership interests or other agreements.

52. Neither the Plaintiff's nor Datwyler ever paid the full compensation owed Franck per the agreements between the parties.

53. Upon information and belief, Datwyler took some or all the profits owed to Franck for his own use.

54. Upon information and belief, Plaintiff, The Free USA, LLC took some or all the profits owed to Franck for its own use.

55. Upon information and belief, Plaintiff, 44 North Lists, LLC, took some or all the profits owed to Franck for its own use.

56. Upon information and belief, Plaintiff, Right Donor Builders PRM, LLC took some or all the profits owed to Franck for its own use.

57. Despite claims by Plaintiffs that Defendant did not show up to the office for 16 days prior to August 31, 2023, it was commonplace that Franck did not go to the office on a daily basis as he often worked from home.  At the outset of their arrangement, both Datwyler and Franck worked full time from their respective homes. Datwyler eventually secured office space in downtown Hudson, Wisconsin for Plaintiff Same Day Processing, Inc., and casually offered Franck space to get out of the house.  However, it was never part of any agreement between Franck and Datwyler, or any of the Plaintiffs, that Franck would spend any amount of time in that office.  During that period, as had been since the start of their business relationship, Franck remained in constant contact with Datwyler, and Plaintiffs, via texting, phone calls and electronic mail.  For example, Franck sent a total of 41 electronic mail messages to Datwyler alone during that 16 day period.

58. Stunned by the sudden default and perceived betrayal by Datwyler, Franck frantically sought options to continue his career and earn money.  Franck ignorantly filed for unemployment compensation.  After researching and understanding his situation did not qualify for unemployment compensation, Franck ceased all efforts to receive the same.  Franck also considered his options regarding the businesses he created in

partnership with Datwyler. Franck did not have sufficient information regarding those businesses to know whether he should pursue his ownership interests or unpaid profits.

59. In or about September, 2023, Franck started a new business, Piera Media LLC which initially focused on marketing for law firms.

60. On or about September 5, 2023, Targeted Victory, a representative of various politicians seeking donations, contacted Franck via Franck's Gmail asking Franck to provide invoices for money owed by Targeted Victory to The Eagle News Network, LLC for previously completed mass electronic mail fundraising efforts. Unsure how to properly proceed, Franck did not respond to those messages at that time.

61. On or about September 11, 2023, Targeted Victory again contacted Franck, via Franck's Gmail, seeking the status of the invoices requested on September 5, 2023. Believing his ownership in The Eagle News Network, LLC permitted him to act as he believed fair, Franck responded to that message with an electronic mail that included a link to an invoice for the amount owed to be paid to Piera Media LLC. Targeted Victory never paid that invoice nor has Franck ever received any payment or compensation from Targeted Victory.

62. On or about September 19, 2023, in an attempt to understand the profitability of businesses such as The Eagle News Network so as to determine whether to pursue legal action to recoup profits owed Franck and/or determine whether Franck could add political fundraising to Piera's offerings, Franck responded again to the September 11, 2023 electronic mail sent by Targeted Victory. In that message: (1) Franck explained to Targeted Victory that, going forward, Franck would be doing business as Piera Media LLC; (2) Franck proffered a different method of utilizing the services Franck previously

provided Targeted Victory through The Eagle News Network LLC; and (3) Franck inquired about Targeted Victory's interest in the services then currently offered by Piera Media LLC. Targeted Victory's reply to that message did not provide Franck any meaningful information. After that reply, Franck did not receive any further communications from Targeted Victory.

## JURISDICTION

63. In addition to the claims in the Complaint regrading jurisdiction and venue, this court has jurisdiction over Third Party Defendant Thomas Datwyler via the supplemental jurisdiction permitted by 28 U.S.C. §1367.

## COUNTERCLAIM I – Theft & Conversion

64. Franck restates and realleges all prior Paragraphs herein.

65. Plaintiff's have taken and kept profits intended for Franck.

66. The actions of Plaintiffs are improper and without justification.

67. Franck has been injured in an amount in excess of $75,000.00 to be determined at trial.

## COUNTERCLAIM II – UNJUST ENRICHMENT

68. Franck restates and realleges all prior Paragraphs herein.

69. Plaintiff's accepted and benefitted from Franck's full time efforts.

70. Plaintiff's knew of the value of Franck's full time efforts based on the agreed upon compensation structure.

71. Plaintiff's further knew of the value of Franck's full time efforts due to the revenue produced for each Plaintiff by those efforts.

72. Plaintiff's retained the benefit of Franck's full time efforts without properly compensating Franck for the same.

73. Franck has been injured in an amount in excess of $75,000.00 to be determined at trial.

### THIRD-PARTY CLAIM I – THEFT & CONVERSION

74. Franck restates and realleges all prior Paragraphs herein.

75. Datwyler has taken and kept profits intended for Franck.

76. The actions of Datwyler are improper and without justification.

77. Franck has been injured in an amount in excess of $75,000.00 to be determined at trial.

### THIRD-PARTY CLAIM II – UNJUST ENRICHMENT

78. Franck restates and realleges all prior Paragraphs herein.

79. Datwyler accepted and benefitted from Franck's full time efforts.

80. Datwyler knew of the value of Franck's full time efforts based on the agreed upon compensation structure.

81. Datwyler further knew of the value of Franck's full time efforts due to the revenue produced for each Plaintiff by those efforts.

82. Datwyler retained the benefit of Franck's full time efforts without properly compensating Franck for the same.

83. Franck has been injured in an amount in excess of $75,000.00 to be determined at trial.

### THIRD-PARTY CLAIM III – PROMISSORY ESTOPPEL

84. Franck restates and realleges all prior Paragraphs herein.

85. Datwyler promised to make Franck a 25% owner of, and ensure Franck received 25% of the profits from, The Free USA, LLC.

86. Franck trusted Datwyler and believed Datwyler would make him a 25% owner of, and ensure Franck received 25% of the profits from, The Free USA, LLC.

87. Relying on Datwyler's promises, Franck left his employment with Bell Bank and performed thousands of hours of work for Datwyler and The Free USA, LLC.

88. Datwyler refused or failed to pay Franck any of the profits from The Free USA, LLC.

89. Justice requires that Datwyler pay Franck 25% of the profits from The Free USA, LLC starting from when Franck performed work for Datwyler and The Free USA, LLC and continuing until such time as Franck no longer owns any of The Free USA, LLC which are believed to be in excess of $75,000.00.

## THIRD-PARTY CLAIM IV – PROMISSORY ESTOPPEL

90. Franck restates and realleges all prior Paragraphs herein.

91. Datwyler promised to make Franck a 25% owner of 44 North Lists, LLC and ensure Franck received 25% of the profits from, 44 North Lists, LLC.

92. Franck trusted Datwyler and believed Datwyler would make him a 25% owner of, and ensure Franck received 25% of the profits from, 44 North Lists, LLC.

93. Relying on Datwyler's promises, Franck left his employment with Bell Bank and performed hundreds of hours of work for Datwyler and 44 North Lists, LLC.

94. Datwyler refused or failed to pay Franck any of the profits from The Free USA, LLC.

95. Justice requires that Datwyler pay Franck 25% of the profits from 44 North Lists, LLC which are believed to be in excess of $75,000.00.

## JURY DEMAND

Defendant demands a trial by jury on all claims so triable.

**WHEREFORE,** Defendant, Gabriel Franck hereby requests the following relief:

1. Dismissing Plaintiff's claims with prejudice and on the merits;
2. As to Defendants' Counterclaims, adjudging, declaring and decreeing that Plaintiff is not entitled to collect from Defendant the damages as set forth in Plaintiffs' Complaint;
3. Awarding Defendant judgment declaring his ownership in Plaintiff 44 North Lists, LLC;
4. Awarding Defendant judgment declaring his ownership in Plaintiff The Free USA, LLC;
5. Awarding Defendant judgment declaring his ownership in Plaintiff Right Donor Builders PRM, LLC;
6. Awarding Defendant judgment declaring his ownership in the The Eagle News Network, LLC;
7. Awarding Defendant judgment against Plaintiffs' as a result of Plaintiffs' conduct in an amount in excess of $75,000.00;
8. Awarding Defendant judgement against Third Party Defendant as a result of Third-Party Defendants' conduct in an amount in excess of $75,000.00;

9. Awarding Defendant his reasonable attorney fees, costs and disbursements incurred herein, as well as pre-judgment interest as allowed by law;

10. For such other relief as this Court deems just and equitable.

Under Federal Rule of Civil Procedure 11, Defendant, through his counsel, certifies to the best of his knowledge, information, and belief that this Answer, Counterclaim and Third-Party Claim: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Answer, Counterclaim and Third-Party Claim otherwise complies with the requirements of Rule 11.

Dated: November 20, 2023       By:   /s/Kristopher J Krentz
                                     Kristopher J. Krentz, Esq.
                                     Bar #0308195
                                     PO Box 865
                                     Osceola, WI 54020
                                     Kris@Krentzlaw.com
                                     952.905.3291

                                     Attorney for Defendant/Third-Party Plaintiff