UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Same Day Processing, Inc.;<br>44 North Lists LLC;<br>Right Donor Builders PDM LLC; and<br>The Free USA, LLC<br><br>        Plaintiffs/Counterclaim Defendants<br><br>vs.<br><br>Gabriel Franck<br><br>        Defendant/Counterclaim Plaintiff<br><br>vs.<br><br>Thomas Datwyler<br><br>        Third Party Defendant. | **Civil No. 23-731**<br><br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS/COUNTERCLAIM DEFENDANTS AND THIRD-PARTY DEFENDANT'S MOTION TO DISMISS AMENDED COUNTERCLAIMS AND THIRD-PARTY CLAIMS** |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs and Counterclaim Defendants Same Day Processing, Inc. ("SDP"), 44 North Lists LLC ("44 North"), Right Donor Builders PDM LLC ("RDB"), and The Free USA, LLC ("The Free USA"), together with Third Party Defendant Thomas Datwyler ("Datwyler) respectfully move to dismiss the Amended Counterclaims & Third-Party Claims filed by Defendant/Counterclaim Plaintiff Gabriel Franck ("Franck").

## INTRODUCTION

Franck asserts counterclaims against all Counterclaim Defendants for conversion and unjust enrichment, and third-party claims against Datwyler for conversion, unjust enrichment, promissory estoppel, breach of contract, intentional misrepresentation, and breach of fiduciary

duty.  All of the counterclaims are premised upon Franck's alleged ownership interests in various Counterclaim Defendants and an assertion that the entities and/or Datwyler should have paid him some unstated amount of profits.  Each counterclaim must be dismissed because Franck's allegations fail to state cognizable claims under applicable law.

As a threshold matter, Franck asserts claims generally against all Counterclaim Defendants, but his counterclaim is devoid of any specific allegations with respect to SDP and RDB.  Franck does not allege that he obtained an ownership interest in either entity, nor does he allege facts from which the Court can infer that he was entitled to any profits from these entities.  As such, SDP and RDB should be dismissed as Counterclaim Defendants because Franck has not adequately alleged these entities engaged in any wrongdoing.

With respect to Franck's substantive claims, Franck's conversion claims against Counterclaim Defendants and Datwyler fail for two independent reasons.  *First*, it is well-established that failure to pay an indeterminate amount of money does not give rise to a conversion claim, which is traditionally defined as the wrongful exercise of dominion over *chattel*. Here, Franck alleges only that he is owed some indeterminate amount of profits as a result of his alleged oral agreements with Datwyler granting Franck an ownership interest in various limited liability companies. These allegations are not sufficient to state a conversion claim.  *Second*, Franck has failed to plausibly plead conversion because his factual allegations are insufficient as a matter of law to establish any ownership interest in, or right to profits from, any Counterclaim Defendant. Moreover, the relevant statutes governing limited liability companies as well as the operating agreements of each Counterclaim Defendant—which the Court may consider at the motion to dismiss stage—do not confer on Franck a right to distributions of profits.  As such, his conversion claims fail.

2

Franck's unjust enrichment claim against Counterclaim Defendants and Datwyler fails for similar reasons: Franck has not plausibly alleged entitlement to profits from any limited liability company, and therefore there can be no unjust enrichment of any party.

Finally, Franck's remaining third-party claims against Datwyler should be dismissed for failure to state a claim upon which relief can be granted. Promissory estoppel damages are limited to reliance damages, but the relief Franck seeks—the payment of profits earned by the Counterclaim Defendant entities—is not a form of reliance damages. Franck has therefore failed to plead any cognizable damages, and his promissory estoppel claim should be dismissed. Franck's four breach of contract claims fail because they are foreclosed by state LLC law and/or the applicable operating agreements and are also barred by the statute of frauds. Franck's remaining two claims must be dismissed because his allegations fail to satisfy the heightened pleading standard applicable to his intentional misrepresentation claim, and Franck has failed to allege the most basic element of a claim for breach of fiduciary duty—the existence of a fiduciary duty.

## FACTUAL ALLEGATIONS

### I.    Franck's Relationship with Datwyler and Alleged Ownership Interest in Counterclaim Defendant The Free USA

Franck alleges that he became friends with Datwyler—a Wisconsin resident and owner/member of each Counterclaim Defendant—in or around March 2021. Counterclaim ¶¶ 2-5, 9. Approximately three months after the two became acquainted, Franck alleges that Datwyler invited Franck to join him in his various business ventures. *Id.* ¶¶ 9-11. According to Franck, Datwyler offered Franck an ownership interest in a business venture, which turned out to be Plaintiff, The Free USA, representing that the business generated "more than $2,000,000.00 in a single year" and that Franck would earn a minimum of $200,000 per year. *Id.* ¶ 14. Franck further

alleges that Datwyler and Franck discussed "how they would co-own political fundraising businesses" and agreed to a 50/50 ownership structure for these unnamed "political fundraising businesses." *See id*. ¶ 16.  In exchange for Franck's commitment to handle the day-to-day operations of the venture, Datwyler allegedly promised Franck would receive a percentage of the profits as well as a $2,000 monthly stipend until the venture grew profitable. *Id*. ¶¶ 17-20.  Franck completed a W9 form in order to receive his $2,000 month stipend. *Id*. ¶ 20.  A month after agreeing to start their 50/50 partnership, Franck alleges that Datwyler instead offered him a 25 percent ownership interest in The Free USA, an existing venture owned 50/50 by Datwyler and non-party Kyle Swarts. *Id*. ¶ 25.  Franck alleges that Datwyler represented a 25 percent ownership would pay Franck a minimum of $200,000/year, and that Franck's ownership would increase to 50 percent at such time that Swarts was cut out of the business. *Id*. ¶¶ 25, 27.  Franck does not allege that Swarts consented to this modification of The Free USA's ownership structure.  Franck likewise does not allege that any agreement between Franck and Datwyler was memorialized in writing.

## II.     Franck's Supposed Ownership Interests in the other Counterclaim Defendants and Non-parties.

From December 2022 through August 2023, Franck alleges that he and Datwyler, along with other non-parties, created various business ventures in which Franck was granted an ownership interest, including: (1) Non-Party The Eagle News Network; (2) Non-Party Synch; (3) Plaintiff/Counterclaim Defendant 44 North; and (4) Plaintiff/Counterclaim Defendants SDP and RDB.  The specific allegations concerning Franck's ownership interest in each entity are set forth below.

***Non-party The Eagle News Network***: In December 2022, Swarts allegedly cut Franck out of The Free USA, prompting Datwyler to suggest he and Franck set up a new company for the two

of them. *Id*. ¶¶ 34-37.  Franck claims that he and Datwyler agreed to call the new company "The Eagle News Network" and split ownership in the entity 50/50.  *Id*. ¶ 41.  Franck does not allege that this entity was ever formed, nor does he allege that the parties entered into any written agreement memorializing their ownership agreement with respect to this entity.  Franck likewise does not name The Eagle News Network as a party to this action.

**Non-party Synch:** Franck next alleges that on or about January 16, 2023, Franck sent Datwyler an outline for a new business venture unrelated to the political fundraising businesses called Synch.  *Id*. ¶ 48.  Franck alleges that Datwyler and his brother would own 50 percent of the venture, Franck would own 25 percent, and 25 percent would be set aside for potential investors.  *Id*.  Franck does not allege that this agreement was memorialized in writing, nor does he name Synch as a party to this action.  Franck does not allege any specific facts concerning whether profits were to be distributed to members of the LLC or when such distributions were to be made.  Franck likewise does not allege that Datwyler's brother agreed to this arrangement.

**44 North**: Franck alleges that Franck and Datwyler, along with non-parties Brian Chatwin and Ryan Datwyler, created Counterclaim Defendant 44 North.  *Id*. ¶ 49.  Franck claims that he owns 25 percent of this venture and alleges that he is entitled to receive 50 percent of the profits from accounts known only to Datwyler and Franck.  *Id*.  Franck does not allege that this agreement was memorialized in writing.  Franck does not allege any specific facts concerning whether profits were to be distributed to members of the LLC or when such distributions were to be made.

**SDP and RDB**: Franck allegedly used office space at SDP, another business owned by Datwyler.  *Id*. ¶ 38.  Franck does not allege an ownership interest in SDP nor does he allege any specific claims against SDP.

5

Franck's allegations regarding RDB are that he supposedly has an ownership interest in it, that it purportedly did work similar to that of The Eagle News Network, and that it allegedly "took some or all of the profits owed to Franck for its own use." *Id*. ¶¶ 4, 45, 58.

## III.   Franck's Counterclaims and Third-Party Claims

Franck asserts counterclaims against Counterclaim Defendants for conversion and unjust enrichment and third-party claims against Datwyler for conversion, unjust enrichment, promissory estoppel, breach of contract, breach of fiduciary duty, and intentional misrepresentation all arising out Franck's alleged ownership interest in and entitlement to profits from The Free USA, 44 North, RDB, and The Eagle News Network, as set forth above.  Specifically, Franck asserts that he was never paid any profits owed to him "per his ownership interests or other agreements" and that Datwyler, The Free USA, 44 North, and RDB took "some or all of the profits" owed to Franck for their own use. *Id*. ¶¶ 53-55, 120.  Franck does not make this same allegation with respect to SDP.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *see also Twombly*, 550 U.S. at 555.  "Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough to survive a motion to dismiss. *Id.* at 678; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009).  When determining whether plaintiff has stated a claim plausible on its face, a court "need not accept as

6

true statements of law or unsupported conclusory factual allegations." *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020).

At the motion to dismiss stage, the Court may consider agreements between the parties not attached to the counterclaim if they are referred to in and central to the counterclaim. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).  The counterclaim need not quote directly from, or even mention, the agreements for the Court to consider such documents in adjudicating a motion to dismiss. *Minch v. City of Chicago*, 486 F.3d 294, 300 n.3 (7th Cir. 2007) (relying on collective bargaining agreement at motion to dismiss stage where complaint did not explicitly mention agreement).  Here, Franck alleges an ownership interest in and a right to profits from various limited liability companies, and these allegations form the basis of all counterclaims and third-party claims asserted.  Under applicable law, the operating agreements of the Counterclaim Defendants govern the distribution of profits from an LLC where there are operating agreements, and these operating agreements are therefore integral to Franck's claims.  The operating agreements may therefore fairly be considered by the Court in adjudicating this motion to dismiss. *See, e.g.*, *Brown v. Montgomery*, No. 20-cv-04893, 2022 WL 767254, at *4-5 (N.D. Ill. Mar. 14, 2022) (considering operating agreement at motion to dismiss stage where it was integral to plaintiff's tortious interference with a contractual relationship claim); *Dietrichson v. Knott*, No. CV 11965-VCMR, 2017 WL 1400552, at *1 n.2 (Del. Ch. Apr. 19, 2017) (considering LLC operating agreement to dismiss claims for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment because it was integral to the claims); *In re NSC Wholesale Holdings LLC*, 637 B.R. 71, 84-85 (Bankr. D. Del. 2022) (considering LLC operating agreement at motion to

4866-8812-7136.1

dismiss stage over objection because an LLC operating agreement "is a document integral to the complaint" where defendants' fiduciary duties are governed by the operating agreement).

## ARGUMENT

## I.    Franck Fails to State a Claim for Conversion

Franck asserts a counterclaim and third-party claim for conversion against Counterclaim Defendants and Datwyler based on the allegation that they "have taken and kept profits intended for Franck." Counterclaim ¶¶ 70, 80.  As set forth below, Franck's allegations fail to state a claim for conversion because (1) as to Counterclaim Defendants SDP and RDB, he has pled no legally cognizable facts; (2) as to all the Counterclaim Defendants and Datwyler, a failure to pay profits cannot form the basis of a conversion claim as a matter of law; and (3) the applicable state statutes and the Counterclaim Defendants' operating agreements also foreclose Franck's claims as a matter of law.

### A.    Franck Fails to Plausibly Allege Claims Against SDP and RDB

As a threshold matter, because Franck has failed to plausibly allege any facts which could give rise to claims against SDP and RDB, they should be dismissed as Counterclaim Defendants.

With respect to SDP, Franck does not allege that he has an ownership interest in SDP or that he was owed profits from that venture.  Indeed, the only allegations in the counterclaim concerning SDP at all are (1) Datwyler owns an interest in SDP; (2) Franck used office space at SDP periodically; and (3) Axiom, a company Datwyler offered to refer Franck to for employment opportunities, has a financial or ownership interest in SDP.  Counterclaim ¶¶ 2, 38, 40, 62.  Because Franck does not allege that SDP engaged in conversion or was unjustly enriched, his claims against SDP should be dismissed. *See Iqbal*, 556 U.S. at 678.

8

Franck also makes only a few factual allegations concerning RDB. Franck alleges only that Datwyler has an ownership interest in RDB, RDB "did the same or similar work as The Eagle News Network," and, "upon information and belief," RDB "took some or all profits owed to Franck for its own use." Counterclaim ¶¶ 4, 45, 58. Franck's conclusory allegation that RDB took profits owed to Franck—an allegation made on unidentified "information and belief"—is devoid of any supporting factual allegations, including any factual allegations that Franck has any entitlement to RDB's profits. The Court cannot accept such conclusory allegations, and any claims against RDB should therefore be dismissed. *Zablocki*, 968 F.3d at 623 (court need not accept as true conclusory assertions unsupported by factual allegations).

**B.      Failure to Pay Profits Cannot Form the Basis of a Conversion Claim Against Any Counterclaim or Third Party Defendant.**

Wisconsin law defines conversion "'as the wrongful exercise of dominion or control *over a chattel.*'" *Home Casual Enterprise Ltd. v. Home Casual LLC*, No. 11-cv-661, 2012 WL 13042156, at *19 (W.D. Wis. Nov. 13, 2012) (quoting *Prod. Credit Ass'n of Chippewa Falls v. Equity Loop Livestock Sales Ass'n*, 261 N.W.2d 127, 129 (1978)). As the Wisconsin Supreme Court has explained, "[t]he plaintiff in a conversion suit . . . must allege and prove either that it was in possession of the chattel at the time of the conversion or that it was entitled to immediate possession." *Chippewa Falls*, 261 N.W.2d at 129. A claim for conversion cannot lie where the allegedly converted property is "an ordinary debt not represented by a document, or of such intangible rights as the goodwill of a business or the names of customers." *Home Casual*, 2012 WL 13042156, at *19 (dismissing claim for conversion based on purchase order, because purchase order "was not chattel, money or the tangible representation of intangible rights"); *see also Md. Staffing Srvs., Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1507 (E.D. Wis. 1996) (dismissing claim for conversion where plaintiff asserted an intangible right to funds wrongfully converted by

9

defendant).  Put simply, "[f]ailure to pay money owed under a contract does not give rise to a claim for conversion."  *Sartin v. Chula Vista, Inc.*, No. 18-CV-1890, 2022 WL 580681, at *3 (E.D. Wis. Feb. 25, 2022), appeal dismissed, No. 22-1486, 2022 WL 4375617 (7th Cir. July 7, 2022).

Here, Franck alleges that Counterclaim Defendants and Datwyler "have taken and kept profits intended for Franck" by virtue of his purported ownership interests in 44 North and The Free USA under his alleged oral agreements with Datwyler.  *See generally* Counterclaim ¶¶ 64-67, 74-77.  This cannot form the basis of a conversion claim, because a failure to pay money owed under an agreement does not give rise to a conversion claim under Wisconsin law.  *Sartin*, 2022 WL 580681, at *3; *see also Kyle v. Apollomax, LLC*, 987 F. Supp. 2d 519, 525-26 (D. Del. 2013) (granting motion for summary judgment on conversion claim brought by limited liability company member for conversion of his membership interest).  This is particularly true where, as here, Franck has not alleged any facts concerning the money to which he is allegedly entitled.  Specifically, he has not alleged how much profit he is allegedly owed (only that Datwyler represented annual profits in the realm of $200,000), what account(s) those profits are in, who owns or controls the account, when the money should have been distributed to him, and so on.  Indeed, *he has not even alleged that any specific Counterclaim Defendant actually made a profit in any particular amount,* much less that its manager or managers authorized distributions to be made to members of the company.  Instead, Franck alleges only that unnamed "business ventures" were "very profitable." Counterclaim ¶ 50.  Franck's general allegations that he is entitled to non-specific amounts of money from undefined sources are not sufficient to state a claim for conversion as a matter of law. *Md. Staffing Srvs.*, 936 F. Supp. at 1507 (conversion claim based on conversion of funds must allege "that the defendants exercised dominion over a specific, identifiable quantity of currency belonging to" the plaintiff).  The claim should be dismissed.

10

**C.      Franck's Claims for Conversion are Foreclosed by State LLC Acts and the Counterclaim Defendants' Operating Agreements.**

Franck's claims for conversion also fail because Franck has not plausibly alleged an ownership interest in or a right to profits from any Counterclaim Defendant under relevant state statutes governing limited liability companies ("LLCs") and/or the operating agreements for 44 North, The Free USA, and RDB.[1] *See, e.g.*, *Sartin*, 2022 WL 580681, at *4 (a defendant is liable for conversion only where it "intentionally controls or takes property belonging to another"). As such, Franck has not adequately alleged a claim for conversion.

**1.      The Free USA**

Franck has not plausibly alleged that he (a) owns an interest in The Free USA and (b) is entitled to distributions of profits—both of which are required for Counterclaim Defendants to have converted those profits.

**a.      The Wisconsin LLC Act Bars Franck's Conversion Claim.**

The Free USA is a Wisconsin limited liability company. Am. Compl. ¶ 9. Pursuant to the Wisconsin Uniform Limited Liability Company Law ("Wisconsin LLC Act"), after an LLC has been formed, a person may become a member only:

**(a) As provided in the operating agreement.**
(b) As the result of a transaction effective under subch. X.

---

[1] The right to obtain distributions from a limited liability company is a matter of corporate governance controlled by the law of the state of organization. 2 Ribstein and Keatinge on Ltd. Liab. Cos. § 16:3 (Foreign LLC provisions) (state statutes governing LLCs "certainly apply formation state law to matters of internal organization such as members' voting, fiduciary and distribution rights"); Wis. Stat. Ann. § 183.0901(1)(a) (the governing law of a foreign limited liability company governs the internal affairs of the company); Del. Code Ann. tit. 6, § 18-901(a)(1) (the laws of the jurisdiction under which a foreign limited liability company is organized govern its organization and internal affairs); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 633 B.R. 437, 449 (D.P.R. 2021), *appeal dismissed*, No. 21-1987, 2022 WL 17547363 (1st Cir. Sept. 13, 2022) (the law of the state of incorporation applies to cases involving corporate governance).

**(c) With the affirmative vote or consent of all the members.**
(d) As provided in s. 183.0701 (1) (c).
(e) As provided in s. 183.0503 (6) (c).

Wis. Stat. § 183.0401(4) (emphasis added).  Subsections (b), (d), and (e) are plainly inapplicable.[2]

Franck, however, does not allege that he became a member either "as provided in the operating agreement" of The Free USA, or "with the affirmative vote or consent of all of the members," as required by subsections (a) and (c), respectively.  As to acquiring an interest under the operating agreement, as explained *infra* at section I.C.1.b, Franck plainly did not comply with the procedures of The Free USA's Operating Agreement, nor does he allege that he did.  And as for the affirmative vote of all members, Franck alleges that Swarts was a member when Franck was supposedly admitted but does not allege that Swarts voted or consented to Franck's admission.  Counterclaim ¶ 25.

Even if Franck were a member of The Free USA, he has not alleged that, under the LLC Act, he had any right to a profit distribution.  In the absence of a different provision being included in a Wisconsin LLC's operating agreement, a member "has a right to a distribution before the dissolution and winding up of a limited liability company ***only if the company decides to make an interim distribution***."  Wis. Stat. Ann. § 183.0404(2) (emphasis added).  In other words, under the Wisconsin LLC Act, no member has a right to receive a share of profits at any time before dissolution—all distributions are discretionary.  Further, under the default rules of the LLC Act, any company-authorized distributions must be made proportionally among members on the basis of the value of the contributions made by each member, as stated in the records of the limited liability company.  *Id*. §183.0404(1).  And unless the operating agreement provides for a different

---

[2] Subsection (b) addresses mergers; subsection (d) addresses companies left with no members; and subsection (e) addresses judgment creditors.

method, an affirmative vote and the consent of all members is required to value a member's contribution. *Id*. §§ 183.0402(2), 183.0407(2)(d)(5).

Judged against the Wisconsin LLC Act, Franck has not plausibly alleged that he was entitled to receive any profits from The Free USA. Specifically, Franck does not allege that The Free USA decided to make any interim distributions, nor does he allege that the company was dissolving and winding up. Franck also does not allege that Kyle Swarts, a non-party who Franck acknowledges has a membership interest in The Free USA, agreed to value Franck's purported "contributions" at 25 percent as alleged in the counterclaim. Counterclaim ¶ 25. But under Wisconsin law, Swarts's approval would have been required unless the operating agreement provided otherwise, which Franck does not allege. Wis. Stat. Ann. § 183.0407(2)(d)(5). As such, Franck fails to plead a plausible claim for conversion because he has not pled an entitlement to any particular distribution, or even that distributions were ever authorized.

### b. The Free USA's Operating Agreement Bars Franck's Conversion Claim.

Franck's conversion claim is also defeated by The Free USA's Operating Agreement. Pursuant to the Wisconsin LLC Act, all members of a Wisconsin LLC—which Franck alleges he is (Counterclaim ¶¶ 5, 25)—are "deemed to assent to the operating agreement" as a matter of law. Wis. Stat. Ann. § 183.0106(2). The operating agreement governs the relationship between members and the LLC, including as to distributions to members. *Id*. § 183.0105(1)(a).

Franck's insurmountable problem is that The Free USA Operating Agreement to which he is deemed to have assented makes clear he has not properly alleged his ownership interest in the first place. Consistent with Franck's own allegations (Counterclaim ¶ 25), the Operating Agreement identifies Kyle Swarts and Tom Datwyler as the existing members, each owning 50%. Decl. of Thomas Datwyler in Support of Motion to Dismiss ("Decl.") Ex. C at page 1 & § 2.1.

13

Franck alleges that, pursuant to an arrangement between him and Datwyler, Franck was to own 25% of The Free USA until Swarts was removed at which point Franck would own 50% of that venture.  Counterclaim ¶ 27.  Franck does not state who was going to transfer to him his initial 25%—whether Datwyler, who allegedly agreed to this plan, or Swarts.  More importantly, however, Franck does not allege any facts supporting the notion that there was a transfer of an ownership interest that complied with the Operating Agreement.

The Operating Agreement contains detailed transfer provisions, requiring that the transferring member provide written notice to the company and the other member before the transfer stating certain information; that the notice be transmitted by the managing member to the other member; and that the transfer receive the consent of the non-transferring member.  Decl. Ex. C at § 7.2(a)-(c).  Franck does not allege any of this occurred, and in particular, he does not allege that Swarts either (1) agreed to transfer 25% of *Swarts' own* ownership interest to Franck, or (2) consented to Datwyler transferring 25% of Datwyler's ownership interest to Franck, as required by Sections 7.2(b) and 7.2(c).

Even if Franck were a member, Franck has not pled entitlement to any distribution of profits under the Operating Agreement.  The Operating Agreement contemplates three types of distributions to members—(1) tax distributions, which are made to assist members in paying income tax and based on a managing member's estimate of federal income tax (*id*. § 3.1(a) & (b)); (2) liquidating distributions, which are paid in the event the company is liquidated and money remains (*id*. § 3.3); and (3) "current distributions," which includes any other distribution to members (*id*. § 3.2).  The only type of distribution conceivably at issue here would be a "current distribution."  Such distributions, however, are made only "at such times and in such form as determined by the Affirmative Vote."  *Id*. § 3.2.  And "Affirmative Vote" means the consent of

14

members holding at least 51% of ownership interests, or the written consent of all members.  *Id.* § 6.2.  Franck does not allege that 51% or more of ownership interests authorized any distributions, and therefore fails to allege any entitlement to receive any distribution of profits.

As such, Franck's allegations are inconsistent with the terms of the Operating Agreement, and Franck has failed to plausibly allege a claim for conversion. *Cornielsen v. Infinium Cap. Holdings, LLC*, 168 F. Supp. 3d 1033, 1041 n.4 (N.D. Ill. 2016) (in event of conflict between allegations and document properly before the court on a motion to dismiss, the document controls).

### 2.     44 North

Franck's allegation that he is entitled to profits from 44 North is implausible for similar reasons—i.e., Franck has not alleged that he is entitled to distributions of profits in conformance with either the applicable LLC Act or the 44 North Operating Agreement.

44 North is a Puerto Rico limited liability company.  Am. Compl. ¶ 7.  Under the Puerto Rico LLC Act, unless a distribution is made pursuant to an operating agreement, the only time a member of an LLC is entitled to a distribution is upon (1) resignation of the member, or (2) dissolution of the LLC.  14 L.P.R.A. § 3985 (member is entitled to receive distributions "upon the happening of the events specified in an LLCA"); 14 L.P.R.A. § 3988 (distribution upon resignation); 14 L.P.R.A. § 4000(a) (distribution of assets upon dissolution).  And the operating agreement must be in writing.  14 L.P.R.A 3951(g) (defining a "Limited Liability Company Agreement or LLCA" to mean a "written agreement . . . adopted by the members of a limited liability company to govern the internal affairs . . . .").

Franck has not alleged that he was entitled to a distribution from 44 North because he either resigned or the company dissolved, and thus he necessarily has not alleged that he was entitled to

15

any distribution of profits under the default rules of the Puerto Rico LLC Act.[3]  Therefore, Franck could be entitled to distribution of profits only under the terms of a written operating agreement. Franck, however, does not allege that he was entitled to any profit distributions under the 44 North Operating Agreement.  Nor was he.  Under that Operating Agreement, "[t]he Members shall determine and distribute available funds annually or at more frequent intervals as they see fit. Available funds, as referred to herein, shall mean the net cash of the Company available after appropriate provision for expenses and liabilities, as determined by the Managers."  Decl. Ex. A § 3.2.[4]

First, Franck has not alleged that the Managers of 44 North ever determined that, after providing for expenses and liabilities, funds were available for distribution to him.  Second, Franck alleges that in addition to himself, Brian Chatwin and Datwyler were also members.  Counterclaim ¶ 47.  But Franck does not allege that Chatwin and Datwyler ever determined that any distributions should be made.   Thus, Franck has not alleged entitlement to any distributions in accordance with the 44 North Operating Agreement, and his conversion claim should be dismissed as against that entity.

### 3.    RDB

Franck's conclusory allegation that RDB took profits owed to Franck is implausible for these same reasons: RDB is also a Puerto Rican limited liability company, and Franck fails to allege that he was entitled to any distribution of profits under the Puerto Rico LLC Act.  Moreover,

---

[3] Moreover, the Puerto Rico LLC Act bars any distributions if the liabilities of the LLC exceed the fair value its assets, and Franck has not alleged that the liabilities of 44 North do not exceed the fair value of its assets.  14 L.P.R.A. § 3991(a).

[4] Portions of the Operating Agreement not relevant to the instant motion, namely, the private addresses and specific capital contributions of members, have been redacted from Exhibits A and B.

16

the RDB Operating Agreement contains the same distribution provision as 44 North's, quoted above.  Decl. Ex. B at § 3.2.  Because Franck does not allege that managers of RDB ever determined that funds were available for distribution to him and that Chatwin and Datwyler ever determined that any distributions should be made, he has not alleged entitlement to distributions under the RDB Operating Agreement. [5]

## II.   Franck Fails to State a Claim for Unjust Enrichment

Franck's claims for unjust enrichment likewise must be dismissed because Franck has failed to allege that it was unjust for the limited liability companies to retain any profits.

Under Wisconsin law, there are three elements of unjust enrichment: (1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof.  *Lindquist Ford, Inc. v. Middleton Motors*, Inc., 557 F.3d 469, 477 (7th Cir. 2009), as amended (Mar. 18, 2009). The elements of unjust enrichment are similar under Puerto Rican law: (1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment, and

---

[5] To the extent Franck's third-party conversion claim against Datwyler alleges conversion of profits owed to Franck by non-party Synch, this claim is likewise foreclosed by applicable state law because Delaware does not provide for interim distributions to members unless provided for in the limited liability company agreement.  6 Del. C. § 18-601.  Instead, distributions may be made upon a member's resignation from the limited liability company and before dissolution and winding up.  *Id*.  Franck has not alleged that the members agreed to interim distributions, nor does he allege that he resigned from the LLC or that it was dissolving.

(5) absence of a legal precept excluding application of enrichment without cause. *Gov't of Puerto Rico v. Carpenter Co.*, 442 F. Supp. 3d 464, 476-77 (D.P.R. 2020).[6]

Franck's claims for unjust enrichment against the Counterclaim Defendants and Datwyler are based on Franck's allegation that the Counterclaim Defendants and Datwyler "retained the benefit of Franck's full-time efforts without properly compensating Franck for the same." Counterclaim ¶¶ 72, 82. But Franck has not alleged that any company had agreed to pay him a salary, for example, and unjustly retained the money rather than paying Franck. Instead, he alleges only that he agreed to work for the companies in exchange for membership interests, and because he was given those interests, he should have been paid from *profit* distributions. Counterclaim ¶¶ 51-56.

As described above, the distribution of profits from a limited liability company is governed by state law and/or the limited liability company's operating agreement. *See* 14 L.P.R.A. § 3985; Wis. Stat. Ann. § 183.0404. An LLC is not obligated to make distributions to members outside of events like dissolution or resignation, and members are not entitled to any distributions from an LLC that are not provided for by statute or the operating agreement. *Id.*

Here, Franck does not plausibly allege that he is entitled to any specific amount of profits from any LLC, *nor has he even alleged that any specific LLC was, in fact, profitable.* Moreover, Franck has not alleged that the parties agreed to distribute profits from any LLC, as opposed to

---

[6]In addressing claims related to the internal affairs of a limited liability company, federal courts apply the law of the state of formation. *Pinnacle Labs, LLC v. Goldberg*, No. 07-C-196-S, 2007 WL 2572275, at *3 (W.D. Wis. Sept. 5, 2007). Franck's unjust enrichment and promissory estoppel claims are based on the alleged wrongdoing of the limited liability companies and their members, and therefore the court should apply Wisconsin law to claims against The Free USA and Puerto Rican law to claims against 44 North and RDB. *Id.* Because the elements unjust enrichment and promissory estoppel are substantially similar in Wisconsin and Puerto Rico, the choice of law issue is of no consequence.

using any profits to further the business of the LLC.  Therefore, Franck has not adequately alleged that Counterclaim Defendants or Datwyler were enriched as a result of failing to pay Franck profits in accordance with his purported membership interest.

## III.   Franck Fails to State Claims for Promissory Estoppel Against Datwyler

Franck's third-party promissory estoppel claims against Datwyler should be dismissed to the extent the claims seek damages in the form of profits because such damages are not cognizable under a promissory estoppel claim.

Under Wisconsin law, the elements of promissory estoppel are: (1) a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) the promise induced such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise.  *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 133 N.W.2d 267, 275 (1965); *Scott v. Savers Prop. & Cas. Ins. Co.*, 2003 WI 60, ¶ 51, 262 Wis. 2d 127, 155, 663 N.W.2d 715, 729 (2003).[7]  The wrong addressed by the doctrine of promissory estoppel "is not primarily in depriving the plaintiff of the promised reward but in causing the plaintiff to change position to his detriment.  In would follow that the damages should not exceed the loss caused by the change of position, which would never be more in amount, but might be less, than the promised reward."  *Hoffman*, 133 N.W. 2d at 277.  Thus, "[d]amages in promissory estoppel actions are limited to reliance damages."  *Werner v. Xerox Corp.*, 732 F.2d 580, 584 (7th Cir. 1984); *see also Noah's Ark v. Egan Enterprises*, No. 90-0598, 1991 Wisc. App.

---

[7] The elements under Puerto Rican law are similar: (1) a certain behavior of a subject, (2) that he has given life to a situation contrary to reality, that is, apparent and, through such appearances, may influence the behavior of others and (3) that it be the basis of the trust of another party which has acted in good faith and that, for that reason, has acted in a manner which would cause him prejudice if his trust was defrauded.  *MMB Dev. Grp., Ltd. v. Westernbank Puerto Rico*, 762 F. Supp. 2d 356, 370 (D.P.R. 2010).

4866-8812-7136.1

LEXIS 666, *11-12 (Wisc. Ct. App., Apr. 25, 1991) ("Damages in promissory estoppel actions are limited to reliance damages."); *Knauf Realty, LLC v. Prudential Real Estate Affiliates, Inc.*, 486 F. Supp. 2d 855, 861  (W.D. Wis. 2007) ("Promissory estoppel is an equitable or quasi-equitable common law doctrine intended to protect parties that have not entered into a contract but none the less incurred damages acting in reliance on promises made by another party" (emphasis added)). Where, as here, the type of damages sought are not legally cognizable for the claim asserted, the court should dismiss the claim.  *In re Abbott Lab'ys, et al. Preterm Infant Nutrition Prod. Liab. Litig.*, No. 22 C 3737, 2023 WL 4564592, at *2 n.3 (N.D. Ill. July 17, 2023).

Here, Franck asserts third party claims against Datwyler for promissory estoppel based on Datwyler's alleged failure to make Franck an owner of, and pay profits from, The Free USA and 44 North after Franck left his employment at Bell Bank to work on these ventures.  Counterclaim ¶¶ 89-105.  But the relief Franck seeks is not the reliance damages he sustained as a result of leaving his job at Bell Bank, but rather the profits of the Counterclaim Defendants.  *Id*. ¶¶ 94, 100, 105.  Because Franck is entitled only to reliance damages, the remedy Franck seeks is inconsistent with the claim asserted, and the Court should dismiss Franck's claims for promissory estoppel.[8]

## IV.    Franck Fails to State Claims for Breach of Contract

Franck asserts four third-party claims against Datwyler for breach of contract arising out of Datwyler's alleged (1) failure to provide Franck with 25 percent of an ownership interest in and 25 percent of profits from The Free USA "while Swarts was part of the business;" (2) failure to

---

[8] Additionally, the purpose of promissory estoppel is to prevent injustice, which is a determination to be made by the Court.  *Hoffman*, 133 N.W. 2d at 275 ("[T]he third requirement, that the remedy can only be invoked where necessary to avoid injustice, is one that involves a policy decision by the court.").  Awarding the relief requested (namely, profits from the various limited liability companies) would not further this goal, as Franck has not alleged that the other members of 44 North and The Free USA consented to granting him an ownership interest in these companies.

provide Franck 50 percent of an ownership interest in and 50 percent of the profits from The Free

USA "after Swarts' part with the business ended;" (3) refusing to provide Franck 50 percent of an

ownership interest in and 50 percent of the profits from The Eagle News Network LLC; and

(4) refusing to provide Franck 25 percent ownership interest in and 25 percent of the profits from

44 North.  Counterclaim ¶¶ 107-126.

> A.   **Franck's Breach of Contract Claims are Foreclosed by State LLC Acts and the Counterclaim Defendants' Operating Agreements (Counts VI-VII, IX)**

Franck's breach of contract claims concerning The Free USA and 44 North are foreclosed

by the applicate State LLC Acts and the Counterclaim Defendants' Operating Agreements.

*44 North*: 44 North is a Puerto Rican limited liability company, and Puerto Rican law

requires any operating agreement—the document that "govern[s] the internal affairs and

administration of a limited liability company"—to be in writing.  14 L.P.R.A 3951(g) (defining a

"Limited Liability Company Agreement or LLCA" to mean a "written agreement").  Here, Franck

alleges he and Datwyler had an agreement governing the operations of 44 North as to at least  profit

sharing.  But Franck alleges the agreement was oral, not written.  Because any operating agreement

of a Puerto Rican LLC must be in writing, Franck's breach of contract claim should be dismissed

as to 44 North.

*The Free USA*: Franck likewise alleges an oral agreement between himself and Datwyler

that Franck will (1) own a 25 percent interest in The Free USA during Swarts involvement and

(2) own a 50 percent interest in The Free USA after Swarts is no longer involved in the company.

Counterclaim ¶¶ 107-116.  Franck also alleges that The Free USA existed before Datwyler

purportedly offered him a stake in this business venture, *id*. ¶ 25, and as set forth above, a written

operating agreement exists for this entity that is binding under applicable state law.  The operating

agreement provides that "[n]o amendment or modification of this Operating Agreement shall be

21

valid unless in writing and signed by all of the Members." Ex. C. § 12.1. Franck, to the extent he alleges he became a member of The Free USA, is bound to the terms of the Operating Agreement by law. Wis. Stat. § 183.0106(2) ("A person that becomes a member is deemed to assent to the operating agreement."). Franck's breach of contract claim must therefore allege a written modification to the operating agreement in order to state a claim for breach of contract. Franck has alleged no such modification.

**B**.   **Franck's Breach of Contract Claims are Barred by the Statute of Frauds**

Each of Franck's breach of contract claims is also barred by the statute of frauds. Under Wisconsin's statute of frauds,[9] "oral contracts for an indefinite duration are terminable at will or they are void for failure to comply with the requirement that contracts that cannot be completely performed within one year must be reduced to writing." *Ege Intern. Forwarding House, plc v. Case Corp.*, No, 98 C 3099, 2001 WL 477225, at *2 (N.D. Ill. May 7, 2001) (interpreting Wisconsin statue of frauds (W.S.A. § 241.02)); *see also Landess v. Borden, Inc.*, 667 F.2d 628, 631 (7th Cir. 1981) ("Contracts for an indefinite duration are terminable at will . . . or they are void for failing to comply with the statute of frauds requirement that contracts that cannot be completely performed within one year must be reduced to writing."); *D'Jock v. Strunk*, No. 02-C-381-C, 2003 WL 23274554, at *5 (W.D. Wis. June 13, 2003) (alleged oral agreement for five-year partnership barred by the statute of frauds); *D'Esposit v. Gusrae, Kaplan & Bruno, PLLC*, 44 A.D.3d 512, 513 (1st Dep't 2007) (oral agreement for right to membership/partnership alleged to have continued indefinitely barred by statute of frauds). Here, Franck appears to allege expectations of profits on

---

[9] Franck does not allege whether these oral agreements included a choice of law provision, and thus the Court should apply Wisconsin law. *State Farm Mutual Auto. Insurance Co. v. Gillette*, 2002 WI 31, ¶ 51, 251 Wis.2d 561, 641 N.W.2d 662 (holding that Wisconsin courts should assume that Wisconsin law applies unless it is clear that non-forum contacts are more significant).

a "per year" basis, suggesting a multi-year and/or indefinite agreement between Datwyler and Franck to operate these businesses as co-owners for the foreseeable future in exchange for Franck investing his time and effort into the companies.  Counterclaim ¶¶ 14, 16, 25, 27, 128-29.  Franck has thus pled himself into a catch-22: either the agreements are void for failure to comply with the statute of frauds or they are terminable at will, such that Datwyler did not violate the contracts by failing to pay Franck profits.  These claims should therefore be dismissed.

C.   **Franck's Breach of Contract Count Concerning His 50 Percent Ownership Interest in The Free USA Is Not Adequately Pled (Count VII )**

Separately, Count VII should be dismissed because Franck's allegations establish that his claim to 50 percent of the profits from The Free USA is conditioned on Swarts's "part with the business end[ing]."  Counterclaim ¶ 113.  However, Franck never actually alleges that Swarts is no longer a member of The Free USA, and therefore there can be no breach of this purported agreement.

V.   **Franck Fails to State a Claim for Intentional Misrepresentation**

Franck's claim for intentional misrepresentation should be dismissed for failure to allege with particularity the what, when, and where of each alleged misrepresentation as required by Rule 9(b).

Under Wisconsin law, the elements of an intentional misrepresentation claim are:

(1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant made the representation either knowing that it was untrue, or recklessly not caring whether it was true or false; (4) the defendant made the representation with the intent to deceive the plaintiff in order to induce the plaintiff to act on it to plaintiff's pecuniary damage; and (5) the plaintiff believed that the representation was true and relied on it.

*Malzewski v. Rapkin*, 296 Wis. 2d 98, 111, 723 N.W.2d 156, 162 (Wis. App. 2006).  Claims for intentional misrepresentation are subject to the heightened pleading requirements set forth in

Federal Rule of Civil Procedure 9(b), such that the plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The plaintiff therefore must plead the "identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni*Quality, Inc. v. Infotronx, Inc*., 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co*., 959 F.2d 677, 683 (7th Cir. 1992)). In other words, "the plaintiff must plead the who, what, when, and where of the alleged fraud." *Id*. (internal quotations omitted); *see also Kaloti Enters., Inc. v. Kellogg Sales Co.*, 283 Wis. 555, 574 (Wis. 2005) (holding intentional misrepresentation claims subject to heightened pleading standard under Wisconsin law). Failure to specifically allege any of the "who, what, when, and where" of the alleged fraud necessitates dismissal of the claim. *Lang v. Tharpe*, 18-cv-1077, 2022 WL 1597421, at *10-12 (E.D. Wis. May 19, 2022) (dismissing intentional misrepresentation claim for failure to allege where and how the alleged misrepresentation was made).

Here, Franck's intentional misrepresentation claim alleges "that Datwyler represented to Franck that the political fundraising businesses that Datwyler desired Franck to join generated $2,000,000.00 per year in revenue and that Franck would earn a minimum of $200,000.00 per year from his share of the profits from those businesses." Counterclaim ¶ 128. At most, Franck alleges the "who" – he does not allege when the representation was made, where the representation was made, or how the misrepresentation was communicated to Franck. Nor does Franck adequately allege the specific content of the misrepresentation, as the allegation only vaguely refers to "political fundraising businesses that Datwyler desired Franck to join" without identifying those businesses by name. Franck's failure to allege his claim with specificity necessitates dismissal. *Lang*, 2022 WL 1597421, at *12.

24

Franck's claim also fails for an additional reason to the extent it is based on a representation that "Franck would earn a minimum of $200,000 per year from his share of the profits from those businesses," because the alleged misrepresentation is not actionable under Wisconsin law. Counterclaim ¶ 128.  Wisconsin law generally limits fraudulent misrepresentation to present, or preexisting, material facts; it does not extend to unfulfilled promises of future events.  *U.S. Oil Co. v. Midwest Auto Care Servs., Inc*., 440 N.W.2d 825, 827 (Wis. Ct. App. 1989) (citing *Hartwig v. Bitter,* 139 N.W.2d 644, 646 (Wis. 1966)).  Here, the alleged misrepresentation concerns the future annual profitability of Datwyler' s business ventures, which Franck alleges turned out to be untrue. Counterclaim ¶¶ 128-29.  Because this type of representation is not actionable under Wisconsin law, the claim should be dismissed for this additional reason.

## VI.    Franck Fails to State a Claim for Breach of Fiduciary Duty

Franck's claim for breach of fiduciary duty should be dismissed because Franck has not alleged that Datwyler owed him a legally cognizable fiduciary duty.  Whether a member of a limited liability company owes any fiduciary duties to other members is governed by state law and often depends on the specific management of the limited liability company.  *Grose v. Rice*, No. 19-C-394, 2019 WL 7049704, at *3 (E.D. Wis. 2019) (interpreting prior version of Wisconsin's LLC law and holding "the mere fact that a person is a member of an LLC does not itself give rise to a fiduciary duty to other members").  For example, under Wisconsin Law, a member in a member-managed limited liability company owes certain duties to the limited liability company and other members, including a duty of loyalty and a duty of care.  Wis. Stat. § 183.0409(2)-(3). In both a member-managed and manager-managed limited liability company, a member is obligated to "discharge the duties and obligations under [the LLC Act] and under the operating agreement and exercise any rights consistently with the contractual obligation of good faith and

fair dealing." Wis. Stat. §§ 183.0409(4), 183.0409(9)(f).  A member in a manager managed LLC does not have any other duty to the company or to any other member solely by reason of being a member.  *Id*.  § 183.0409(9)(f).  Under Puerto Rican law, members and managers owe a duty of loyalty only to the limited liability company.  14 L.P.R.A § 3977.[10]

Here, Franck alleges only that he and Datwyler, as "co-owners" of "multiple businesses" "owed each other fiduciary duties."  Counterclaim ¶ 134.  Franck does not allege with specificity the "multiple businesses" to which he refers, which itself is fatal to his breach of fiduciary duty claim, as the counterclaim mentions numerous businesses taking different corporate forms and organized under the laws of different states and potentially implicating different fiduciary duties, if any.  Presumably Franck intends to reference 44 North, RDB, and/or The Free USA.  But for the reasons set forth in Sections I-II *supra,* Franck has not (and cannot) allege facts from which this Court could infer that he became a member of any of these limited liability companies such that he would be owed any fiduciary duties.  Moreover, even if Franck had alleged he became a member of these entities, both 44 North and RDP are organized under the law of Puerto Rico, and therefore Datwyler owes no fiduciary duties to Franck.  14 L.P.R.A § 3977 (setting forth duty of loyalty to the limited liability company).  Franck's breach of fiduciary duty claim should be dismissed.

---

[10] 14 L.P.R.A. § 3977 reads in full: "The members and managers shall be as loyal to the limited liability company and liable for their acts and omissions in the exercise of their duties as the directors, officers and stockholders with regard to corporate matters pursuant to the provisions of Chapter 224 of this subtitle."  The duties of directors, officers, and stockholders as set forth in Chapter 224 likewise concern the duty of loyalty owed to the corporation.

4866-8812-7136.1

## <u>CONCLUSION</u>

For the foregoing reasons, Franck's counterclaim and third-party claim should be dismissed in its entirety.

Dated: January 26, 2024

BY: */s/ Andrew C. Gresik*

Roberta F. Howell
Andrew C. Gresik
Foley & Lardner LLP
150 East Gilman Street
Madison, WI 53703
Telephone: (608) 258-4273
Facsimile: (608) 258-4258
rhowell@foley.com
agresik@foley.com

Lauren W. Linderman (*pro hac vice*)
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
lauren.linderman@faegredrinker.com

Katlyn M. Moseley (*pro hac vice*)
1500 K Street, Suite 1100
Washington, DC 20005
Telephone: (202) 842-8800
Facsimile: (202) 842-8465
katlyn.moseley@faegredrinker.com

**Attorneys for Plaintiffs/Counterclaim Defendants and Third-Party Defendant**

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system and was served on the following by email:

Kristopher J. Krentz
P.O. Box 865
Osceola, WI 54020
Kris@Krentzlaw.com
952.905.3291

Kevin Sandstrom
Eckberg Lammers
1809 Northwestern Avenue
Stillwater, MN 55082
ksandstrom@eckberglammers.com

Dated: January 26, 2024                    _/s/ Andrew C. Gresik_____

28

4866-8812-7136.1