UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Same Day Processing, Inc.;<br>44 North Lists LLC;<br>Right Donor Builders PDM LLC; and<br>The Free USA, LLC<br><br>    Plaintiffs/Counterclaim Defendants<br><br>vs.<br><br>Gabriel Franck<br><br>    Defendant/Counterclaim Plaintiff<br><br>vs.<br><br>Thomas Datwyler<br><br>    Third Party Defendant. | **Civil No. 23-731**<br><br><br>**REPLY IN SUPPORT OF<br>PLAINTIFFS/COUNTERCLAIM<br>DEFENDANTS AND THIRD-PARTY<br>DEFENDANT'S MOTION TO DISMISS<br>AMENDED COUNTERCLAIMS AND<br>THIRD-PARTY CLAIMS** |

   Plaintiffs and Counterclaim Defendants Same Day Processing, Inc. ("SDP"), 44 North Lists LLC ("44 North"), Right Donor Builders PDM LLC ("RDB"), and The Free USA, LLC ("The Free USA"), together with Third Party Defendant Thomas Datwyler ("Datwyler) submit this Reply in Support of their Motion to Dismiss the Amended Counterclaims & Third-Party Claims filed by Defendant/Counterclaim Plaintiff Gabriel Franck ("Franck").

## <u>INTRODUCTION</u>

   Franck's Opposition is riddled with misapplications of the law, mischaracterizations of his own allegations and counterclaims, and pleas for additional discovery to fill in the clear gaps in his factual allegations.  Substantively, Franck ignores many arguments made by Counterclaim Defendants and Datwyler and avoids engaging with the merits of others.  For example, he ignores

Counterclaim Defendants' argument that SDP and RDB should be dismissed as Counterclaim Defendants because there are not sufficient factual allegations against these entities to state any claim for relief.[1]  His failure to address this argument amounts to a concession, and these entities should be dismissed as Counterclaim Defendants.

With respect to his conversion claim, Franck misapplies or otherwise overstates the law, arguing (incorrectly) that his claim for conversion of an unquantified amount of business profits is cognizable.  Under settled law, it is not.

With respect to his conversion, unjust enrichment, and breach of contract claims, Franck tried to dodge the motion to dismiss by ignoring state statutes governing ownership rights and profit distributions even while his claims are for ownership rights and profit distributions. Franck's failure to plead a membership interest in or an entitlement to profit distribution from any specific limited liability company that satisfies the requirements of state law is fatal to each of these claims.

Finally, rather than respond to Datwyler's pleading arguments on his breach of contract, intentional misrepresentation, and breach of fiduciary duty claims, Franck asks for discovery.  But it was Franck's burden to allege sufficient facts in his Counterclaim to state a plausible claim for relief; he cannot take a kitchen sink approach to pleading and then try to backfill in discovery.

All told, Franck's Opposition does nothing to show the Court that the allegations in his Counterclaim are sufficient to state plausible claims for relief, and the Court should grant Counterclaim Defendants' and Datwyler's Motion to Dismiss.

---

[1] As to SDP, Defendant's counsel has represented in email correspondence that Franck does not assert claims against SDP, notwithstanding that the Counterclaim is styled as alleged against all Plaintiffs/Counterclaim Defendants.  *See* ECF No. 35-9 at 6.

2

## ARGUMENT

### I.    Franck Concedes that He Fails to State Any Claims against Plaintiffs SDP and RDB

The Counterclaim's allegations are remarkably thin as to SDP and RDB.  *See* Memorandum in Support of Motion to Dismiss (ECF No. 27) ("Memo") at 8-9.  Specifically, with respect to SDP, the Counterclaim does not set forth *any* factual allegations that would suggest SDP engaged in conversion or was unjustly enriched.  *Id*. at 8.  And Franck's sparse "upon information and belief" allegations directed at RDB are insufficient to state a claim.  *Id*. at 9.

Franck's Opposition does not address these arguments.  Indeed, his Opposition references SDP only five times, all in the introductory paragraph or factual background section.  Opp. at 1, 3, 9-10.  Franck also mentions RDB only a total of five times – four in the introductory paragraph or factual background and once where it is lumped together with 44 North and The Free USA.  Opp. at 1-3, 19.  Nowhere does Franck address or respond to the arguments that the claims against SDP and RDB should be dismissed for failure to allege sufficient facts.  By failing to address these arguments, Franck concedes that any counterclaims against RDB and SDP should be dismissed.  *Lee v. Ne. Ill. Reg'l Commuter R.R. Corp*., 912 F.3d 1049, 1053–54 (7th Cir. 2019) (failure to address an opposing party's argument "clearly result[ed] in waiver" and acted as a concession of the argument); *Urquhart v. Roeseler*, No. 18-CV-879-JPS-JPS, 2019 WL 4305896, at *2 (E.D. Wis. Sept. 11, 2019) ("Plaintiff entirely failed to respond to Defendants' arguments on this point, much less cite other, more persuasive cases. . . . The Court could thus conclude that Plaintiff has waived any argument in opposition to Defendants' position.").

II.   **Franck's Conversion Claims Fail as a Matter of Law**

A.   **Failure to Pay Profits Cannot Form the Basis of a Conversion Claim**

Franck argues that he has sufficiently alleged a claim for conversion because he alleges that Counterclaim Defendants and Datwyler "converted *money*," and the Wisconsin Supreme Court has held that claims for conversion apply to money.  Opp. at 16-17.  Franck is wrong on the law.

As explained by the Seventh Circuit,

If you simply owe someone money and fail to pay it, you have broken a contract but you have not taken your creditor's property.  But suppose you render a service to someone, and he sends you a check, but by the time that check arrives you have moved, and instead of forwarding the check the person who now lives at your old address deposits it in his account and invites you to sue him for it.  That would be a clear case for conversion.

*Kentuckiana Healthcare, Inc. v. Fourth St. Solutions, LLC*, 517 F.3d 446, 447 (7th Cir. 2008).  In short, not all claims for conversion of "money" are created equal.  Whether a claim for conversion lies will depend on whether the defendant simply failed to pay money owed, or rather converted specific funds to which the plaintiff was immediately entitled.   Only the latter is actionable. *Milwaukee Center for Independence, Inc. v. Milwaukee Health Care, LLC*, 929 F.3d 489, 493-95 (7th Cir. 2019) (applying Wisconsin precedent and noting distinction between "a general right to payment" and entitlement to "specific funds"); *compare Methodist Manor of Waukesha, Inc. v. Martin*, 255 Wis.2d 707, 647 N.W.2d 409 (Wis. Ct. App. 2002) (affirming finding that nursing home resident's son was liable for conversion where son received specific funds from resident's social security income to which nursing home was entitled), *with Methodist Manor Health Center, Inc. v. Py*, 307 Wis.2d 501, 746 N.W.2d 824 (Wis. Ct. App. 2008) (no conversion claim against resident's granddaughter because there was no evidence granddaughter received specific funds to which nursing home was entitled).

4

As explained in the Motion to Dismiss, Franck does not allege any facts from which the Court could infer that Counterclaim Defendants and/or Datwyler converted specific funds to which Franck was entitled.  The Counterclaim does not allege how much money Franck is purportedly owed, what account(s) those profits are in, who owns or controls the account(s), when the money was due and payable to Franck, or even which specific entities owe him money.  Rather, Franck alleges a general right to annual profits from various limited liability companies based on his purported membership in those companies.  Accordingly, Franck alleges nothing more than a general right to payment, which cannot form the basis for a conversion claim under Wisconsin law.  *Home Casual Enterprise Ltd. v. Home Casual LLC*, No. 11-cv-661, 2012 WL 13042156, at *19 (W.D. Wis. Nov. 13, 2012) (no claim for conversion based on "an ordinary debt not represented by a document, or of such intangible rights as the goodwill of a business or the names of customers"); *Staffing Srvs., Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1507 (E.D. Wis. 1996) (dismissing claim for conversion where plaintiff asserted an intangible right to funds wrongfully converted by defendant); *Sartin v. Chula Vista, Inc.*, No. 18-CV-1890, 2022 WL 580681, at *3-5 (E.D. Wis. Feb. 25, 2022), appeal dismissed, No. 22-1486, 2022 WL 4375617 (7th Cir. July 7, 2022) (recognizing that failure to pay money owed under a contract does not give rise to a claim for conversion and discussing issues with establishing possession or possessory interest under plaintiffs' theories).  Franck's claims for conversion should therefore be dismissed.

Franck does not meaningfully address the case law cited in Counterclaim Defendants' and Datwyler's brief.  He argues only that this Court's decision in *Home Casual* is inapposite because it alleged conversion of purchase orders.  Opp at 17.  Franck does not argue that the two propositions for which Counterclaim Defendants and Datwyler cited *Home Casual* – that Wisconsin law defines conversion as the "wrongful exercise of dominion over a chattel" and that

5

conversion claims will not lie where the converted property is "an ordinary debt represented by a document" or intangible rights—are incorrect.  Nor does Franck explain why the factual distinction matters.  Just like the purchase order in *Home Casual*, an ownership/membership interest in an entity, and the potential profits flowing therefrom, is not "chattel, money, or the intangible representation of intangible rights."  2012 WL 13042156, at *19.[2]

Franck also argues that he need not specify the amount converted to state a claim for conversion.  Opp. at 17.[3]  Franck is once again wrong on the law.  As explained above, Wisconsin courts distinguish between an entitlement to specific funds on the one hand (which necessarily involves allegations of a specific dollar amount, or at the very least identification of a specific account), and a general right to payment on the other; only the former gives rise to a conversion claim.  Tellingly, each case Franck cites holding that money may be the subject of a conversion claim involved allegations of a specific and quantifiable sum of money.  *Regas v. Helios*, 176 Wis. 56, 186 N.W. 165 (1922) (conversion claim could lie against defendants that took $1,000 from plaintiff and did not invest as promised); *Meyer v. Doherty*, 133 Wis. 398, 113 N.W. 671 (1907) (conversion claim could lie against defendant based on defendant's retention of $8,000 from bank account); *H.A. Friend & Co. v. Professional Stationary, Inc.*, 294 Wis. 2d 754, 760, 763 (2006)

---

[2] Franck also appears to take issue with the term "chattel," (which is puzzling, given that the term is derived from a Wisconsin Supreme Court case and "chattel" simply means property other than real estate), but misses the point.  Opp. at 16.  Counterclaim Defendants and Datwyler do not argue that Franck's claim for conversion must be dismissed simply because chattel does not encompass money.  Rather,  the conversion claim should be dismissed because the law does not recognize a claim for conversion based on a failure to pay an indeterminate amount of money generally owed.

[3] Franck includes a separate argument section in the Opposition that is not specific to any one claim and instead argues generally that Counterclaim Defendants' and Datwyler's repeated assertions that Franck's claims fail because he did not specify the amount of lost profits are incorrect.  *See* Opp. at 15-16.  Other than as discussed in this section as related to the conversion claim, Counterclaim Defendants and Datwyler do not make any such arguments and are unsure of what specific arguments or claims this section of Franck's brief is in opposition to.

(conversion claim could lie where allegations involved conversion of specific sum of money from specific checking account and money market funds). Franck's conversion claim therefore fails as a matter of law, and his claim against both Counterclaim Defendants and Datwyler should be dismissed.

**B.    Franck's Conversion Claim Should be Dismissed Because He Has Not Alleged Facts Sufficient to Establish his Membership in or Right to Distribution from Any LLC Under State Law**

Franck does not meaningfully address Counterclaim Defendants' arguments based on state statues; instead, he appears to suggest that discovery is required before the Court may reach these arguments. *See* Opp. at 18-19. Not so. The applicable statutes plainly advised Franck what he needed to allege to state a claim based on a supposed ownership interest in a limited liability company ("LLC"), but Franck failed to comply.

Franck alleges that he is entitled to profits from 44 North and The Free USA because he and Datwyler supposedly agreed that he would become a member/owner of those entities. *See* Opp. at 18. But Franck cannot escape the fact that LLC membership and profit distributions are governed by state statute. Thus, to be entitled to the profits that were allegedly converted by The Free USA, 44 North, and Datwyler, and to state a claim for conversion of such profits, Franck must allege facts from which the Court could infer that he became a member of each LLC and was entitled to a profit distribution under applicable state law. *Prod. Credit Ass'n of Chippewa Falls v. Equity Loop Livestock Sales Ass'n*, 261 N.W.2d 127, 129 (1978) ("The plaintiff in a conversion suit . . . must allege and prove either that it was in possession of the chattel at the time of the conversion or that it was entitled to immediate possession."). This Franck has not done.

With respect to The Free USA, Wisconsin statute provides that an individual may became a member of an already existing limited liability company either as provided by the Operating

Agreement or with the affirmative vote of all members. Wis. Stat. § 183.0401(4).[4] Franck did not allege either. Franck acknowledges that non-party Kyle Swarts was a member of The Free USA at the time Franck purportedly became a member, Counterclaim ¶ 25, but does not allege that Mr. Swarts voted on, or even consented to, Franck's membership. Nor does Franck allege that The Free USA Operating Agreement required something less than the affirmative vote of all members—in fact, he urges the Court to ignore that Operating Agreement. Thus, Franck plainly has not alleged an ownership interest in compliance with Wisconsin statute.

Nor has Franck alleged entitlement to LLC profits in accordance with Wisconsin statute. Wis. Stat. Ann. § 183.0404(2). Franck has not alleged that The Free USA was dissolving or winding up, or that the members authorized an interim distribution, as would be necessary for him to have a right to a distribution of profits. *Id*. Because Franck does not allege facts from which the Court could infer that he was a member of The Free USA or entitled to any distribution of profits from that entity, he cannot state a claim for conversion premised on a failure to distribute to him a portion of The Free USA's profits.

As to 44 North, under Puerto Rican statute, an LLC member is entitled to a distribution of profits only upon his or her resignation or dissolution of the LLC. 14 L.P.R.A. § 3985 (member is entitled to receive distributions "upon the happening of the events specified in an LLCA"); 14 L.P.R.A. § 3988 (distribution upon resignation); 14 L.P.R.A. § 4000(a) (distribution of assets upon dissolution). Of course, an operating agreement between the members could vary this law, but here again, Franck has not alleged any operating agreement, and in fact argues the Court should

---

[4] *See also* Memo. at 11-12, 12 n.2 (noting that other provisions of statute concerning membership are inapplicable to the present case).

ignore the Operating Agreement.  Franck therefore has not alleged facts from which the Court could infer that he was entitled to any distribution of profits.

In sum, an essential element of a claim for conversion is that the plaintiff possessed, or otherwise had an immediate right to possession of, the property allegedly converted. *Chippewa Falls*, 261 N.W.2d at 129; *see also* Opp. at 17 (listing first element of conversion as the "intentional control or taking of property ***belonging to another***") (emphasis added)).  Franck has not alleged facts from which the Court could infer that he possessed or had an immediate right to possession of profits from 44 North or The Free USA, the property he alleges was converted.  The conversion claims should therefore be dismissed.

### C.    Franck's Conversion Claims are Foreclosed by the Operating Agreements

#### 1.    The Court May Consider the Operating Agreements

Franck argues that the Court may not consider the LLC operating agreements submitted with the Motion because such documents do not fall within an exception to the general rule that matters outside the pleadings are not considered at the motion to dismiss stage.  Opp. at 14, 18.  This argument relies on an overly narrow view of the applicable exceptions.  The Seventh Circuit has held that documents attached to a motion to dismiss may be considered by the Court if they are "referred to in the plaintiff's complaint and central to his claim."  *Rosenblum v. Travelbuys.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).  Documents need not be explicitly referenced in the complaint to fall within this exception.  *Id*. ("Although Mr. Rosenblum did not refer explicitly to the Employment Agreement in his complaint, that agreement nevertheless falls within the exception.").  The purpose of the rule is to prevent a party from surviving a motion to dismiss by artful pleading or failure to attach relevant documents.  *Id*.

Here, Franck's conversion claim is premised on his allegation that he is a member of various LLCs and therefore entitled to profits. But LLCs are creatures of state law, and their internal affairs, including membership and profit distribution, are governed by the laws of the state of organization. *See, e.g.*, Wis. Stat. Ann. § 183.0901(1)(a) (the governing law of a foreign limited liability company governs the internal affairs of the company). Where an operating agreement exists, issues of membership and profit distribution are governed by the operating agreement. Wis. Stat. § 183.0401(4) (membership); Wis. Stat. Ann. § 183.0404(2) (profit distribution). Moreover, members of an LLC are deemed to assent to the operating agreement as a matter of law. Wis. Stat. Ann. § 183.0106(2). And while Franck seems to suggest in his Opposition that the corporate form of the companies does not matter because "it may be possible that not all business ventures were formalized into correctly-formatted limited liability companies," Opp. at 18, his Counterclaim asserts claims against specific Plaintiff entities that are, in fact, properly formed LLCs subject to state law – a fact of which this Court may take judicial notice. *See, e.g.*, *Western States Envelope Co. v. Midwest Envelopes I, Inc.*, No. 12-CV-561, 2013 WL 5539416, at *5 (E.D. Wis. Oct. 8, 2013) ("The Court will take judicial notice of the Secretary of State of Illinois' website.").[5] The LLC operating agreements are therefore implicitly invoked by Franck's allegations that he is a member of these various LLCs and are central to Franck's claims. He therefore cannot escape having these agreements considered on a motion to dismiss by artful pleading or arguments

_____

[5] Information concerning the The Free USA is available on Wisconsin's Department of Financial Institutions website, at https://www.wdfi.org/apps/corpsearch/Details.aspx?entityID=T088101&hash=1836477201&searchFunctionID=90a2abbf-ec1b-4b29-94fa-d3066b5259bc&type=Simple&q=The+Free+USA. Information concerning 44 North is available on the Government of Puerto Rico's Department of State website, at https://rceweb.estado.pr.gov/en/entity-information?c=517154-1511.

encouraging the Court not to consider documents embraced by his complaint. *See Rosenblum*, 299 F.3d at 661 (discussing purpose of exception).

Importantly, however, while Counterclaim Defendants and Datwyler submit that the Court may appropriately consider these documents at the motion to dismiss stage, their motion does not depend on the Court doing so. As explained in Section II.B *supra*, state law likewise demonstrates that Franck's conversion claims should be dismissed.

**2. The Operating Agreements Demonstrate that Franck's Conversion Claim is Not Sufficiently Pled**

Franck does not allege facts from which the Court may infer that he became a member of either The Free USA or 44 North in a manner that satisfies the terms of the operating agreements of either entity.[6] *See* Memo. at 12-14. Similarly, he does not allege facts from which the Court could infer that either LLC even made a profit distribution per the terms of the operating agreements. *Id*. Because Franck has failed to allege he was entitled to the profits he claims were converted, his conversion claims should be dismissed. *Chippewa Falls*, 261 N.W.2d at 129 ("The plaintiff in a conversion suit . . . must allege and prove either that it was in possession of the chattel at the time of the conversion or that it was entitled to immediate possession.").

**III. Franck Fails to State a Claim for Unjust Enrichment**

Franck fails to state a claim for unjust enrichment because he has not alleged that any LLC has retained profits it was obligated to pay to Franck, or otherwise made a distribution of profits

---

[6] As previously explained, Franck did not dispute Counterclaim Defendants' arguments that RDB should be dismissed as a counterclaim defendant. Moreover, it appears from Franck's Opposition that he is specifically seeking profits from The Free USA and 44 North, *see* Opp. At 17 (arguing that Franck "was duly entitled to monetary profit from various joint business ventures he engaged in with Datwyler, particularly 44 North, The Free USA, and The Eagle"). Therefore, Counterclaim Defendants do not repeat the arguments raised in their motion to dismiss concerning RDB for the sake of brevity.

to members that Datwyler retained for himself, such that the LLC or Datwyler was unjustly enriched.  Memo. at 17-18.  In response, Franck argues that his claim for unjust enrichment should survive because (1) Datwyler promised to pay Franck $2,000/month until the business became profitable;  (2) Datwyler promised that Franck's ownership interest(s) would produce $200,000/year in profits, thereby creating an obligation for profits to be distributed; and (3) the value of the ownership interests of each LLC was denied to Franck.  Opp. at 21.  These arguments do not save Franck's unjust enrichment claims from dismissal.

As to the first argument, Franck does not allege anywhere in the Counterclaim that he was not paid the $2,000/month allegedly promised to him.  Thus, this cannot form the basis for an unjust enrichment claim.

Franck's second argument is also unavailing.  As a threshold matter, it mischaracterizes Franck's actual allegations.  The Counterclaim alleges that Franck was entitled to $200,000 simply because he was a member of various businesses, and that the businesses were unjustly enriched in retaining the profits intended for him.  More specifically, the allegations in the Counterclaim establish that the $200,000 in profits Franck expected *were not based on the value of his work*, but rather on an estimate Datwyler provided based on the current *value of the businesses*.  *See* Counterclaim ¶ 14 (alleging Datwyler told Franck, before Franck ever committed to working for The Free USA, that the company generated $2,000,000.00 in a single year, that non-party Swarts took home between $30,000 and $60,000/month despite his "lack of performance," and that Franck, too, "would earn a minimum of $200,000 per year while Swartz remained part of the business" if he joined the company).  Franck changes course in the Opposition, claiming that "Mr. Datwyler promised Franck $2,000 per month until profits from their shared businesses were consistently distributed to reach the $200,000/year Mr. Datwyler promised Mr. Franck would earn

*from his efforts building those businesses*," Opp. at 21 (emphasis added).  But the Counterclaim never alleges that the $200,000/year was promised as the value of Franck's "efforts building those businesses."   In essence, Franck is conflating a salary with a profit distribution—the former is payment for work performed, the latter is payment based on an ownership interest in an entity, regardless of the work (if any) performed.  Franck alleged only the latter, *i.e.*, that he was to be paid based on his supposed ownership interests.  Franck cannot use his Opposition to amend the factual allegations in his Counterclaim.

Additionally, Franck's argument underscores that Franck had not adequately alleged unjust enrichment.  According to both the Opposition and the Counterclaim, Datwyler allegedly "offered to pay Franck a minimum monthly amount of $2,000.00 *until profits were consistently distributed to reach the $200,000 per year minimum profit sharing Datwyler previously represented Franck would earn*."   Counterclaim ¶ 16 (emphasis added); *see also* Opp. at 21.  Franck purportedly accepted that offer.  *Id*.  Thus, Franck's own allegations contradict the arguments made in the Opposition, as Franck never alleges that any business reached the purported $200,000/year threshold, thus triggering the alleged obligation to pay profits and the resulting "unjust enrichment."  Nor for that matter has he alleged that any specific LLC was, in fact, profitable at all.

But even assuming that the "businesses" did produce a profit, this does not create an "obligation for profits to be distributed" from 44 North or The Free USA, as Franck argues.  As described above, the distribution of profits from a limited liability company is governed by state statute and/or the limited liability company's operating agreement.  *See* 14 L.P.R.A. § 3985; Wis. Stat. Ann. § 183.0404.  Members are not entitled to any distributions from an LLC that are not provided for by statute or the operating agreement, and Franck has not alleged that either entitled

13

him to profits here.  *Id.*  Thus, Franck fails to allege that the lack of profit distribution from any

LLC is inequitable, and his unjust enrichment claim must be dismissed.[7]

## IV.   Franck Fails to State Claims for Promissory Estoppel Against Datwyler

Franck argues that damages for promissory estoppel are not limited to reliance damages.

But contrary to Franck's suggestion, the Seventh Circuit's decision in *Cosgrove* did not overrule

*Werner*, which held that "[d]amages in promissory estoppel actions are limited to reliance

damages."  *Werner v. Xerox Corp.*, 732 F.2d 580, 584 (7th Cir. 1984).  *Cosgrove* simply pointed

out *in dicta* that Wisconsin law might be inconsistent with the Seventh Circuit's decision in

*Werner*, but did not reach the issue.  *Cosgrove v. Bartolotta*, 150 F.3d 729, 734 (7th Cir. 1998)

("This assumes that you can get an award of expectation damages on a claim of promissory

estoppel in Wisconsin, and apparently you can, see *Kramer v. Alpine Valley Resort, Inc*., 108

Wis.2d 417, 321 N.W.2d 293, 294 (1982), although we said you couldn't in *Werner v. Xerox Corp*.,

732 F.2d 580, 585 (7th Cir.1984).  That is of no importance here.").  Moreover, the *Kramer*

decision to which *Cosgrove* cited affirmed only reliance damages.  *See generally Kramer*, 108

Wis. 2d 417, 321 N.W. 2d 293 (stating as to damages, "Since the trial court found that the damages

were due to plaintiff's change of position in reliance on [Defendant's] promise. . . , the award was

not an abuse of discretion").

---

[7] Franck also argues that Counterclaim Defendants and Datwyler "appear to claim that the shared businesses were profitable and that those profits were retained by the companies for growth," and that Franck is entitled to discovery on those claims.  Opp. at 21-22.  Counterclaim Defendants and Datwyler make no such claim.  At the pleading stage, it is Franck's obligation to plead facts that, if accepted at true, state a plausible claim for unjust enrichment.  Counterclaim Defendants and Datwyler have simply pointed out that Franck has failed to allege that the businesses were profitable or that, to the extent profitable, the parties agreed to distribute those profits.

More generally, expectation damages are inconsistent with the purpose of promissory estoppel. As the Wisconsin Supreme Court has observed, the wrong addressed by the doctrine of promissory estoppel "is not primarily in depriving the plaintiff of the promised reward but in causing the plaintiff to change position to his detriment." *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 133 N.W.2d 267, 277 (1965). Therefore, it follows that "the damages should not exceed the loss caused by the change of position, which would never be more in amount, but might be less, than the promised reward." *Id*. Franck's argument suggesting that *Hoffman* allows for expectation damages misconstrues the decision. While the value "of the promised performance" is relevant to a determination of damages, this is because damages should never "be more in amount" than the promised reward. *Id*. In sum, *Werner* remains good law and necessitates dismissal of the promissory estoppel claim because the damages sought are not cognizable.[8]

Expectation damages are not appropriate here because awarding the relief requested (payment of 44 North and The Free USA's profits) would be manifestly unjust. Memo at 20 n.8. Franck acknowledges in his counterclaim that there are other members of both 44 North and The Free USA, and he does not allege that they consented or otherwise agreed to what Datwyler allegedly promised. Counterclaim ¶¶ 25, 49. Thus, it is apparent from the face of the Counterclaim that awarding expectation damages would be unjust, and the Court should therefore dismiss the claim.

---

[8] Though Franck does not cite this case in his Opposition, Datwyler acknowledges that lower courts in Wisconsin have sometimes allowed expectation damages. *Tynan v. JBVBB, LLC*, 306 Wis. 2d 522, 532-34 (Wis. App. 2007) (recognizing that courts have awarded expectation damages but affirming trial court's rejection of such damages on facts of the case). That case law also makes clear, however, that the measure of damages is within the Court's discretion. *Id*. at 531 (recognizing that the third element of promissory estoppel "that the remedy can only be invoked where necessary to avoid injustice" is to be determined by the Court).

**IV**.   **Franck Fails to State Claims for Breach of Contract**

Franck's Opposition muddies the waters of his breach of contract claim.   While the Counterclaim alleged that Datwyler breached contracts with Franck because he failed or refused to provide Franck an ownership interest in or profits from The Free USA, The Eagles News Network, and 44 North, *see* Counterclaim ¶¶ 107-126, the Opposition appears to clarify that the claims against Datwyler are premised on Datwyler's supposed promise to make Franck an owner of certain business ventures by adding his name to corporate documents, not by failing to pay profits.  Opp. at 25-26.  This ambiguity only further demonstrates Franck's failure to meet the basic pleading standard set forth under the Federal Rules.   In any event, Franck's argument does not meaningfully address the bases for dismissal set forth in the Motion to Dismiss concerning the operating agreements and state law, which foreclose Franck's claims.  *See* Memo. at 21.

With respect to the statute of frauds, Franck does not dispute that the alleged contract could not be performed within one year; rather, he argues only that discovery may demonstrate the existence of a writing that may satisfy the statute of frauds, such as emails or text messages.  Opp. at 26.  This argument is nonsensical.  Franck, who received the supposed promises personally, would obviously know if written documentation, whether emails or text messages, existed, and could have so alleged.  Franck cannot escape dismissal by arguing that he may later recall some documents he does not recall now that might support the allegations he already made.  If Franck contends that written documentation exists that satisfies the writing requirement of the statute of frauds, he should have plead it.

Franck's argument that there is a part performance exception to the statue of frauds is equally unavailing.  The case to which Franck cites in support of this purported exception relies on a statute that is not applicable here because (1) the statute has since been repealed; and (2) the

16

statute specifically concerned conveyances of real property.  *Bunbury v. Krauss*, 41 Wis.2d 522, 534 164 N.W.2d 473 (1969) (citing Wis. Stat. § 240.09 (1969), which previously provided: "Nothing in this chapter [Fraudulent Conveyances and Contracts Relating to Real Estate] contained shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance of such agreements").  Franck has not cited any case law suggesting that partial performance of a contract that does not concern the conveyance of real property can place an oral contract outside of the statute of frauds.  And to the extent such an exception would apply beyond real estate transactions, Franck has not alleged facts from which the Court can infer there was partial performance sufficient to remove this case from the statute of frauds.

Specifically, for the partial performance exception to apply, to the extent it exists,  "the acts relied on [for partial performance] must unequivocally refer to and result from the agreement." *In re Pirates Hyjacked Robbed and Stole Everything, Inc.*, 318 B.R. 502, 506 (Bankr. W.D. Wis. 2004).  "They must be such as would not have been performed but for that very agreement and with a direct view to its performance and must be such as to leave no uncertainty in the case."  *Id.* Franck has not alleged facts from which the Court could infer that his work for the Counterclaim Defendant entities – in this case the alleged partial performance – is the type that would not have been performed but for Datwyler's alleged agreement to grant Franck an ownership interest.  To the contrary, Franck expressly acknowledges that he completed an IRS W9 form so he could be paid $2,000/month for his work, and that he filed for unemployment compensation after he ceased work for the Counterclaim Defendant entities.  Counterclaim ¶¶ 20, 63.  The allegations in the Counterclaim are therefore equally, if not more, consistent with an employment relationship and fail to support Franck's legal arguments concerning the part performance exception.

17

**V.**   **Franck Fails to State a Claim for Intentional Misrepresentation**

Franck argues that he has satisfied Rule 9(b) because his Counterclaim alleges that "Mr. Datwyler (the who), on August 25, 2021 (the when), represented that Mr. Franck would earn a minimum of $200,000 per year (the what) by virtue of joining Mr. Datwyler's business ventures." Opp. at 27-28.  This allegation only proves Datwyler's point.  A plaintiff asserting fraud must plead the "identity of the person making the misrepresentation, the time, <u>place</u>, and <u>content of the misrepresentation</u>, and <u>the method by which the misrepresentation was communicated to the plaintiff</u>." *Uni*Quality, Inc. v. Infotronx, Inc*., 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co*., 959 F.2d 677, 683 (7th Cir. 1992) (emphasis added)).

Perhaps the most glaring deficiency is that with respect to the content of the alleged misrepresentation, Franck does not name the "business ventures" to which he refers.  This is particularly problematic because the Counterclaim references no less than five.  Indeed, some of Franck's allegations suggest the purported $200,000 per year applied only to The Free USA, *see* Counterclaim ¶¶ 14, 25, 27, while others suggest the promise applied more broadly to all "political fundraising businesses" collectively.  *Id.* ¶ 16; *see also id.* ¶ 28 (referring vaguely to "businesses" collectively).

Franck also does not allege *where* or *how* Datwyler made these various promises.  While the Counterclaim reads as if the promises were oral, it doesn't state as much, and Franck now appears to contend in his Opposition that there may be some written documentation.  Opp at 26. Franck's sparse and contradictory allegations are not sufficient to satisfy the heightened pleading standard. *Lang v. Tharpe*, 18-cv-1077, 2022 WL 1597421, at *10-12 (E.D. Wis. May 19, 2022) (dismissing intentional misrepresentation claim for failure to allege where and how the alleged misrepresentation was made).

Franck's claim also fails because Wisconsin law generally limits fraudulent misrepresentation to present, or preexisting, material facts; such a claim cannot be based on unfulfilled promises of future events.  *U.S. Oil Co. v. Midwest Auto Care Servs., Inc*., 440 N.W.2d 825, 827 (Wis. Ct. App. 1989) (citing *Hartwig v. Bitter,* 139 N.W.2d 644, 646 (Wis. 1966)).  While Franck is correct that a fraudulent misrepresentation claim may be based on future intent if the defrauding party has no intention of performing, Opp. at 28, he makes no such allegation in his Counterclaim, which is why he cites none.

## VI.     <u>Franck Fails to State a Claim for Breach of Fiduciary Duty</u>

Franck essentially argues that any fiduciary duty claim should survive to discovery, regardless of whether supporting facts are pled.  Opp. at 29-30.  This argument ignores ***Franck's*** obligation to plead sufficient factual matter that, when taken as true, shows a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Franck has not plead facts supporting a claim that Datwyler owed him a fiduciary duty.

Franck's breach of fiduciary duty claim is premised on Datwyler's alleged duty to Franck as a co-owner of "multiple businesses."  But as explained in Datwyler's motion to dismiss, the existence and scope of the fiduciary duties of co-owners to a business depend on both the corporate form of the business and the state law under which the business is organized.  Memo. at 25-26.  For example, Plaintiffs The Free USA and 44 North are established LLCs organized under the laws of Wisconsin and Puerto Rico, respectively, which set forth different statutory fiduciary duties.  If one of the "multiple businesses" included in Franck's breach of fiduciary duty claim is 44 North, there are no fiduciary obligations to a co-member in an LLC.  14 L.P.R.A § 3977 (setting forth duty of loyalty to the limited liability company).  And more generally, Franck has not alleged he is actually a member of either of those entities, as shown above.  Because the existence and

scope of a fiduciary duty is contingent on the *source* of the fiduciary duty, Franck's vague and conclusory allegation that Datwyler owed him a fiduciary duty as a co-owner of "multiple businesses" is insufficient.  Because Franck has not plausibly alleged the existence of a fiduciary duty,  this claim should be dismissed.


## **CONCLUSION**

For the foregoing reasons, Franck's counterclaim and third-party claim should be dismissed in its entirety.

Dated: February 26, 2024

BY: _____

       Roberta F. Howell
       Andrew C. Gresik
       Foley & Lardner LLP
       150 East Gilman Street
       Madison, WI 53703
       Telephone: (608) 258-4273
       Facsimile: (608) 258-4258
       rhowell@foley.com
       agresik@foley.com

       Lauren W. Linderman (*pro hac vice*)
       Faegre Drinker Biddle & Reath LLP
       2200 Wells Fargo Center
       90 South Seventh Street
       Minneapolis, Minnesota 55402
       Telephone: (612) 766-7000
       Facsimile: (612) 766-1600
       lauren.linderman@faegredrinker.com

       Katlyn M. Moseley (*pro hac vice*)
       1500 K Street, Suite 1100
       Washington, DC 20005
       Telephone: (202) 842-8800

Facsimile: (202) 842-8465
katlyn.moseley@faegredrinker.com

***Attorneys for Plaintiffs/Counterclaim Defendants
and Third-Party Defendant***